No. 29,029.

The State of Kansas, *Appellee*, v. Lee McMahan, *Appellant*.

(291 Pac. 745.)

Opinion filed October 11, 1930.

*C. L. Kagcy* and *L. M. Kagey*, both of Beloit, for the appellant.

*William A. Smith*, attorney-general, and *Harry Lanning*, county attorney, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: Lee McMahan was charged with and convicted of the larceny of three steers, and has appealed.

It appears that the defendant and three others, namely, Willard Jones, Donald Payne and Lloyd Zimmerman, participated in taking, transporting and the selling of three steers, the property of John Edelman at Oneida, and they were taken to and sold in St. Joseph, Mo., and there is testimony that the proceeds of the sale were divided among the four persons. Upon being arrested, two of the participants confessed their part in the larceny and testified that all four assisted in the taking and loading of the steers in the truck of the defendant, who, with Zimmerman, drove to the stockyards where the cattle were sold for $163.56; that the money was there divided equally among them, that is $40 to each, and the balance, $3.56, was given to defendant to purchase whisky. Defendant said that he was only employed to truck the steers to St. Joseph for the agreed price of $14; that he did not inquire nor know who was the owner of the steers; that he went to the place he was directed to go and found the steers tied on the side of the road; that he backed up his truck and the steers were loaded into the truck about midnight and were driven by him to St. Joseph, where Zimmerman, who accompanied him, attended to the sale of the steers. There defendant signed a slip indicating that the steers were owned by Clyde Barrett, of Wetmore, of whose existence defendant had never heard. He testified that he had only been paid $14 out of the proceeds of the sale and he had no knowledge that the steers had been stolen.

There were a number of circumstances brought out in the testimony tending to confirm the evidence of Jones and Payne, who testified that defendant had participated in the theft of the cattle and shared equally with the others in the division of the money derived from the sale. It must be said that there was an abundance of evidence to sustain the finding of the jury that defendant was guilty of larceny.

One assignment of error is that the court permitted demonstrations adverse to the defendant. It appears that at one stage of the proceedings counsel for defendant objected to what he called a demonstration, but what the demonstration was or the extent of it is not stated in the record. To this objection the court responded, "There must be no demonstration, no matter what happens." A few minutes later in the trial defendant's counsel again said, "I do not like, if the court please, to be here and have these demonstrations"; and the court responded, "There have not been any demonstrations of consequence." And addressing those in attendance, the court

said, "If you are not quiet you will be put out of the court room. Everybody will be put out if it is necessary. Proceed." Whether the defendant was prejudiced by the demonstration, whatever it may have been, cannot be determined from the record. As we have seen, the court remarked that no demonstration of consequence had been made. It then admonished bystanders that if any demonstration occurred they would be expelled from the court room. The only evidence of a disturbance was a general objection by counsel and the reproof of the court, which was promptly given, and it may be assumed that the rebuke was effective. In a case where there was an expression of applause by spectators at the trial, it was said:

"The applause of the audience appears to have been promptly checked and rebuked by the court. An outbreak of applause by bystanders during an argument, which is promptly suppressed and condemned, is not a ground for a new trial unless it is shown that the jury were influenced by the incident." (*State v. Killion,* 95 Kan. 371, 148 Pac. 643.)

It not having been shown that the demonstration was of such a character as to have influenced the jury or affected its verdict, it cannot be regarded as a ground for reversal.

Another complaint is of a remark by the court when the defendant undertook to show that the county attorney had an interview with the wife of defendant and tried to have her induce the defendant to plead guilty to the charge made against him. An objection to the testimony was sustained and the court remarked that, "We are not trying the county attorney." This remark, it is said, had a prejudicial effect on the jury, but we see no merit in the objection.

Then in the opening statement made by counsel for defendant, he undertook to state that Zimmerman, who had testified against the defendant at the preliminary examination, would testify that later he went to the defendant and told him that he knew defendant had nothing to do with stealing the cattle, and said, "I want to do what is right," and the defendant replied, "Well, if you want to talk to me you will have to talk to me in the presence of somebody else." An objection was made to the statement of the proposed testimony, which was sustained by the court. No error would have been committed if the objection had been overruled, although there is a question whether conversations between witnesses were admissible; but in the trial Zimmerman did testify, repudiating to quite an extent his former evidence, and gave testimony which was intended

to exculpate defendant of the offense charged. On direct and cross-examination of Zimmerman these matters were gone over, and we think that in no way could the ruling have been prejudicial to defendant.

Some other objections are made to rulings and comments of the court, but we find nothing material in them. Complaint is made of the instructions given. In one, the court after quoting the statute that, "Any person who counsels, aids or abets in the commission of an offense may be charged, tried and convicted in the same manner as if he were a principal," then proceeded to say that—

"Under the statute above cited, persons who are either actually or constructively present at the commission of an offense, aiding and abetting or counseling and procuring the same to be done, may be tried and punished as if he were a principal. One to abet in the commission of a crime must do or say something showing consent to the felonious purpose, and must contribute to its execution. The advice or encouragement may be by words, acts, signs or motions. Actual presence is not essential; it may be constructive."

The criticism is that the court did not define the words "constructively present." The expression is not an unusual one, and being in common use it may be assumed that it was understood by a Kansas jury. However, if a definition was necessary or would have aided the jury, it should have been requested by the defendant. The failure to give such a definition is not a ground of reversal in the absence of a request for the same by the defendant. (*State v. Hobl*, 108 Kan. 261, 268, 194 Pac. 921.)

Another instruction of which complaint is made is the orthodox one relating to possession of recently stolen property. It reads:

"The possession of stolen property, recently after the theft, throws upon the possessor thereof the burden of explaining such possession; and if the same is unexplained, such possession may be sufficient of itself to warrant a conviction of the crime of larceny. However, such possession to warrant a conviction by reason thereof must have been so recent after the time of the commission of the larceny as to render it morally certain that such possession could not have changed hands since the commission of such larceny."

It is said that this rule was not applicable to the facts in the case, since there was no dispute here but that the cattle were stolen, no dispute that they were loaded into defendant's car and that he drove them to St. Joseph, and no dispute but that he was in possession of them up to the time of sale, but it is said that the real question was his state of mind while he was driving them to St. Joseph. The in-

struction, we think, was applicable to the case, the evidence tended to show that the defendant joined in the taking of possession of the property and that he and Zimmerman had possession of it thereafter until it was sold. The possession was recent and without change until the sale was made. The court had in other parts of the charge instructed the jury as to the element of intention in the acts done, and had also guarded the plaintiff's interest by defining possession as stated in the rule relating to recent possession, and also as to joint possession of stolen property as follows:

"Possession of personal property, within 'the meaning of the statute under which the defendant is being prosecuted, means corporeal possession in fact, and corporeal possession is the continuing exercise of a claim to the exclusive use of the material thing. The elements of this possession are, first, the mental attitude of the claimant, the intent to possess, to appropriate to oneself; and, second, the effective realization of this attitude. Effective realization involves the relation of the claimant to other persons, amounting to a security for their noninterference, and the relation of the claimant to the material thing itself, amounting to a security for exclusive use at will. One to be in possession of personal property must be in a position to exercise control and dominion over said property, but said control, dominion and possession may be jointly exercised with another person or persons. If two or more persons have possession and control over personal property as above defined, neither one nor both could escape responsibility because the other shared in the joint possession and control of the personal property."

We find no error in the instructions.

Some other objections are made which are not deemed worthy of special treatment. We have read the record of 196 pages, misnamed an abstract, and also the assignments of error, but we do not discover any material error, and hence the judgment is affirmed.