No. 45,940

STATE OF KANSAS, *Appellee*, v. ALLEN R. BENSON, *Appellant*.

(485 P. 2d 1266)

Opinion filed June 12, 1971.

*Jim Lawing* of Lawing and Prather, of Wichita, was on the brief for the appellant.

*R. K. Hollingsworth*, Deputy County Attorney, argued the cause, and *Vern Miller*, Attorney General, and *Keith Sanborn*, County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Appellant was convicted of unlawful possession of a drug (cannabis or marijuana) as proscribed by K. S. A. 65-2502. He was sentenced under K. S. A. 65-2519a for a period of not more than seven years. He appeals from that conviction and sentence.

The record indicates the charge and conviction arose from events at a "rock festival" held on May 25, 1969, at Riverside Park in Wichita, Kansas.

Detective Coonrod and Detective Costello of the Wichita police department were patrolling the park on that day. From a distance of 60 feet they noticed three persons squatting beneath a tree. The three persons were David Holloway, Vicki Cuda and the appellant, Allen R. Benson. Holloway was putting money in his billfold. The police officers knew that Holloway was reputed to

be a dealer in marijuana. They saw the appellant smoke a cigarette in a manner used by persons smoking the drug. Appellant handed the cigarette to Vicki Cuda who puffed on the cigarette and then passed it back to him. The detectives began walking toward the group. Someone in the vicinity shouted a warning. The appellant took one last puff on the cigarette and threw it on the ground. The trio began to retreat from the detectives. The woman went in one direction and the men walked toward a river which runs through the park. One of the detectives retrieved the cigarette butt from under the tree where it had been discarded and proceeded to follow the appellant and his companion. There was an elevation between the tree and the river and the detectives lost sight of the appellant for approximately ten seconds after he topped the rise. When appellant was again in sight the detectives noticed the two individuals had separated. Appellant was at the bank of the river a distance of thirty or forty feet from the detectives. Detective Coonrod saw the appellant stoop over and drop something near the water's edge. Appellant then dove into the river and began to swim. He returned to the bank on command. The detectives retrieved a wet plastic bag from the river bank where appellant had stooped over before entering the river. The bag contained four matchboxes of a substance later identified as the drug commonly called marijuana. A police chemist tested the substances taken from the matchboxes as well as the contents of the cigarette butt. All proved to be marijuana.

The appellant raises six questions of error in this appeal.

The first concerns evidence introduced at the trial and the instructions of the court as to possession of the marijuana cigarette.

The information charged that:

". . . [O]n or about the 25th day of May, A. D., 1969, one ALLEN R. BENSON did then and there unlawfully, feloniously, wilfully keep and have in his possession and under his control at 500 Nims, Wichita, Sedgwick County, Kansas, for personal use and otherwise, approximately 31.00 grams of Canabis Indica and Cannabis Sativa, commonly called Indian Hemp (Marijuana); . . ."

Evidence during the trial indicated the weight of the bulk marijuana in the matchboxes to be 9.085 grams, and the marijuana in the cigarette was never weighed. Appellant contends there was a fatal variance between the information, which alleged possession of bulk marijuana, and the evidence of possession of the marijuana which included the cigarette. He argues that the state should have

been required to elect on which specific quantity of marijuana they relied for conviction—the cigarette or the marijuana in the matchboxes.

We do not agree.

The statute (K. S. A. 65-2502) does not require possession of any specific amount of marijuana to constitute a violation of the statute. The allegation in the information as to 31.00 grams was surplusage.

The case of *State v. Crimmins,* 31 Kan. 376, 2 Pac. 574, relied upon by appellant is not persuasive. In that case the defendant was charged with the illegal sale of liquor. The evidence indicated sales had taken place on several separate occasions. Each sale constituted a separate violation of the law.

The purpose of requiring an election is to prevent injustice and hardship on the defendant in preparing a defense against a non-specific charge. In the present case the possession of marijuana was specifically charged to have occurred on May 25, 1969, at 500 Nims, Wichita, Kansas. The specific address of the Riverside Park is 500 Nims. So both the date and place of the unlawful possession were charged. In addition, the activities of the appellant in attempting to elude the officers and dispose of the marijuana did not change a single possession into several violations. The incidents were all parts of a single violation.

In *State v. McCombs,* 163 Kan. 225, 181 P. 2d 473, where defendant was charged with having inflicted great bodily harm upon another, a similar demand to require the state to elect on what facts it would rely for conviction was urged on the court. In answer the court said:

". . . The evidence amply disclosed appellant deliberately attacked Cloyd and that while technically it might be said there were two assaults there was in legal contemplation only one affray. The two assaults were part of one and the same complete affray. The time between the attacks was momentary. It lasted only long enough for some of the bystanders to separate appellant from his victim. Appellant immediately made the second attack. The motion to elect was properly overruled." (p. 229.)

In the present case the evidence indicated the appellant had in his possession a cigarette containing marijuana and a plastic bag containing additional amounts of the drug. It is the possession of the drug which is made unlawful. The information, disregarding the surplusage as to the number of grams of the drug, sufficiently advised the appellant of the time and place of the particular offense. There was no hardship or injustice placed on appellant in making his defense to this single charge of unlawful possession.

Appellant raises a further question as to the court's instructions concerning what constitutes possession or having under his control this narcotic drug. It was stated in the instructions that possession denotes physical dominion or control over the prohibited article, that no particular period of physical dominion or control is necessary and that if a person has a marijuana cigarette in his possession and control with the intent to possess the prohibited drug such a possession is sufficient under the statute.

We have carefully examined all the instructions to the jury and taking them as a whole find nothing improper or prejudicial in the instructions given which would constitute reversible error.

Appellant's next contention is that the court committed prejudicial error in not discharging the appellant at the close of the state's evidence because, through oversight, the exhibits of marijuana were not formally introduced and admitted into evidence in the state's case in chief. This oversight was discovered later in the trial and the exhibits were all introduced and admitted into evidence when the state's rebuttal evidence was introduced.

We see no merit to this contention.

The testimony of the police officers and of the police chemist was sufficient if believed to sustain the charge. The physical exhibits were before the court and jury while testimony was being given. In *State v. Oswald,* 197 Kan. 251, 417 P. 2d 261, it was said:

"This court has said when an exhibit has been before the court and jury, subject to their inspection for all purposes of the trial the objection cannot prevail on appeal. (*State v. Bowman,* 80 Kan. 473, 103 Pac. 84.) Such an oversight occurring either in the trial of this case or in preparing the record on appeal would be a technical error or defect mentioned in K. S. A. 62-1718, which reads:

" 'On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties.' " (p. 255.)

In addition, the technical error in failing to offer these exhibits into evidence was cured by their formal admission later in the trial.

Appellant's next point of error arises from his charge that all prospective jurors in his case were allowed to sit in the courtroom prior to his trial and observe another defendant in a wholly unrelated case enter a guilty plea. He charges that said defendant received probation from the judge and that by reason of this the jurors were more inclined to find appellant guilty. This contention was raised by appellant in his motion for new trial.

A careful search of the record fails to disclose any of the facts as alleged. Therefore, the question is not before us in this case and cannot be a basis for relief.

However, it would seem to be the better practice to exclude prospective jurors from the courtroom during proceedings in unrelated cases where pleas of guilty are accepted and probation granted. Such proceedings may well influence the prospective jurors and tend to confuse the separate cases in their minds. If this practice is being allowed we urge its discontinuance.

The next point raised on appeal is directed toward the effect of an oral statement interpolated by the judge between portions of the written instructions read to the jury.

After reading that portion of the instructions which states it is unlawful in Kansas for any person to possess marijuana, the judge orally remarked, "that some people can have legal possession of marijuana, but that is not applicable in this case."

Appellant contends this extemporaneous oral statement violates K. S. A. 62-1447 which requires the instructions to the jury to be in writing and filed among the papers of the cause.

It is difficult for us to classify this oral remark of the trial judge, interpolated between written instructions, as an instruction on the law of the case which would govern the jury in its deliberations. It is true such oral comments during the reading of the instructions add nothing beneficial to the law of the case. Such practice is not approved by this court.

However, the present statement is clearly distinguishable from those which we have held to be reversible error. (See *State v. Stephens,* 168 Kan. 5, Syl. ¶ 4, 209 P. 2d 924.) Such a statement more nearly falls in a category with those considered in *State v. Potter,* 15 Kan. 302, Syl. ¶ 8, and *State v. Myers,* 173 Kan. 253, 245 P. 2d 1200.

In *State v. Oswald,* supra, a written answer to a juror's question was considered not to be an independent statement of a rule of law of the case and therefore not violative of the statute requiring instructions to be submitted in writing before the jury retires to deliberate.

In any event this particular volunteer statement does not appear prejudicial to the appellant. At most it could only be prejudicial to the prosecution, for it indicated possible instances where pos-

session of the drug is lawful but it did not disclose under what circumstances such was true.

We hold this oral extemporaneous statement by the court was a technical and inadvertent error to be disregarded by this court under K. S. A. 60-2105, since it does not affirmatively appear to have affected the substantial rights of the appellant, and it appears upon the whole record that substantial justice has been done.

The final contention of appellant is without substance. A claim is made the trial court abused its discretion by denying probation to the appellant.

Under the probation statute as it previously existed (G. S. 1949, 62-2214) and the case law (See *Peay v. Hand*, 184 Kan. 182, 334 P. 2d 369) the granting or termination of a parole was not subject to review by an appellate court.

Although the probation statute in effect when appellant was sentenced (K. S. A. 62-2239, now K. S. A. 1970 Supp. 21-4603) does not contain the specific statutory provision to limit appellate review of an order granting or denying probation, we adhere to our prior position.

The granting and revocation of probation is a matter entrusted by the legislature to the trial court and should remain there. An appellate court has no personal contact with an applicant for probation and is in no position to evaluate and determine the necessary factors upon which any probation should be based. Probation is a continuing relationship requiring constant supervision. This an appellate court cannot provide.

The granting of probation is exclusively a function of the trial court and we hold a decision of the trial court denying probation is not subject to review by an appellate court.

The judgment of conviction and sentence is affirmed.