No. 54,290

STATE OF KANSAS, *Appellee,* v. JOHN YOST, *Appellant.*

(654 P.2d 458)

Opinion filed December 3, 1982.

*Tracy J. Thull,* of Cawker City, argued the cause and was on the brief for the appellant.

*Darrell E. Miller,* county attorney, and *Lyle J. Koenig,* of Hebron, Nebraska, argued the cause, and *Robert T. Stephan,* attorney general, was with them on the brief for the appellee.

The opinion of the court was delivered by

FREDERICK WOLESLAGEL, District Judge Retired: The subject matter of this case is restitution in orders of ⌐:iminal case proba-

tion. It centers on the power of a court to provide restitution payments to a party secondarily aggrieved when he has compensated the original aggrieved party.

Defendant brings a direct appeal from an order which modified the restitution provision of an earlier order of probation. The original provision for probation provided for restitution to the direct, and original, victim of defendant's crime. When the revised order was made, a third party had reimbursed the original victim. Defendant contends the trial court acted without authority in granting the motion of the third party substituting that third party for the restitution payments. He also contends that the trial court should have granted defendant's motion that payments be cancelled because the original victim had been paid.

The case is one of first impression in this State. In affirming the action of the trial judge, we consider related decisions from other states, but rely also on what we consider to be the general intent encompassed in the Kansas statute, and a rational interpretation of words, as contrasted with what, arguably, is expressed in a portion of the statute's exact language.

The events that led to this appeal began when the defendant gave Jim Wilson a worthless check in the amount of $42,566.08 for 81 head of steers. The steers went to Julius Williams in Nebraska where they were sold in a consignment sale business he operated. The check went, endorsed, to the North Central Kansas Production Credit Association which had a mortgage on the steers.

Yost was convicted of giving the worthless check as a violation of K.S.A. 21-3707. After obtaining a presentence report he was sentenced and placed on probation. One condition of probation was that in five equal annual installments he pay the exact amount of the check with interest to Wilson.

Wilson and the credit association thereafter obtained a judgment against Williams in the United States District Court in Nebraska for $50,466.83 plus interest which Williams paid to Wilson. Yost was jointly sued in that action but dismissed for the apparent reason that he was then in bankruptcy.

The rulings Yost complains of resulted from motions later filed and heard together by the trial judge. The first was Williams' motion that he be substituted to receive payments originally scheduled to go to Wilson since he had fully paid Wilson. The

second was Yost's motion that he should not have to make restitution payments since Wilson had recouped his loss.

Before going to the merits of the appeal, we address some jurisdictional issues raised by the parties.

The defendant claims the trial court didn't have jurisdiction to order the revised payment inasmuch as it ordered the payment to go to an unauthorized person. In probation matters, however, jurisdiction of the trial court is continuing. See K.S.A. 21-4603; *State v. Benson,* 207 Kan. 453, 458, 485 P.2d 1266 (1971). The court had jurisdiction of the subject matter and the parties. The true question in the case is whether or not the trial court exceeded its authority in a matter under its jurisdiction.

The State says, relying on *Benson,* that this court doesn't have jurisdiction for this appeal. While that case perhaps indicated that the continuing jurisdiction in probation matters lies exclusively in the trial court, it must be interpreted with cases holding otherwise. Cases specifically finding that this court may review include *State v. Nelson,* 196 Kan. 592, 412 P.2d 1018 (1966); *State v. Rasler,* 216 Kan. 292, 532 P.2d 1077 (1975); and *Swope v. Musser,* 223 Kan. 133, 573 P.2d 587 (1977). We believe, moreover, that this case has some statewide importance relative to the proper exercise of the judicial function in probation matters. The appellate courts may forego ordinary rules for appellate review when there is a controversy of statewide interest. *Pauley v. Gross,* 1 Kan. App. 2d 736, 737, 574 P.2d 234 (1977), *rev. denied* 225 Kan. 845 (1978).

The State also claims that this court does not have jurisdiction because this appeal was taken more than 130 days after imposition of sentence and K.S.A. 22-3608 and K.S.A. 21-4603(3) are applicable under *State v. Henning,* 3 Kan. App. 2d 607, 599 P.2d 318 (1979). The ready answer is that those statutory sections are directed to imposition of sentence. Time limits are set therein for appeal from the sentence as imposed. Pointedly, K.S.A. 22-3608(1) recognizes that probation terms are always viable. So that a judge may not think his continuing jurisdiction to modify probation extends his time limit to modify a sentence, that section ends: "The power to revoke or modify the conditions of probation shall not be deemed power to modify the sentence."

Being free to consider the merits of the appeal, we first turn to the pertinent parts of the applicable statute, K.S.A. 21-4610:

"(1) *Except as required by subsection (4), nothing in this section shall be construed to limit the authority of the court to impose or modify any general or specific conditions of probation* or suspension of sentence, except that the court shall condition any order granting probation or suspension of sentence on the defendant's obedience of the laws of the United States, the state of Kansas and any other jurisdiction to the laws of which the defendant may be subject.

. . . . .

"(4) In addition to any other conditions of probation or suspension of sentence, the court, unless it finds compelling circumstances which would render a plan of reparation or restitution unworkable, *shall order the defendant* convicted of a crime in this state *to make reparation or restitution to the aggrieved party* for the damage or loss caused by the defendant's crime, in an amount and manner determined by the court." Emphasis supplied.

We have no trouble in agreeing with the trial court's denial of the defendant's motion to terminate payments. He accepted the original order and there is no reason that he should be allowed to take advantage of the fact that Wilson was able to be made whole by court action against another innocent party indirectly victimized by defendant's wrongful act.

Whether the statute carries the power of substitution of aggrieved parties, however, is far from clear. In an attempt to find some legislative history which might aid in this determination, we have traced antecedent statutes back to 1935 and obtained what little legislative committee reports are available. We have found nothing thereby that indicates what the answer should be.

Defendant's claims of error as to the substitution are listed as five rather lengthy issues. They can be simplified to the following four without damage to substance:

1. Arbitrary determination that Williams' loss was as much as Wilson's.

2. Action prohibited by Section 16 of the Bill of Rights to the Kansas Constitution.

3. Action prohibited by the Fourteenth Amendment to the United States Constitution.

4. Lack of statutory authority to find, in effect, that Williams was the "aggrieved party."

Taking these claims in the order listed, it has never been disputed that Williams paid Wilson more than the amount of the worthless check on which the trial court measured the restitution amount. For a court to accept, and act upon, something the parties agree upon can hardly be classified as arbitrary action. Further, defendant presents nothing other than his bare assertion in sup-

port of his claim of arbitrary determination. It is incumbent on one claiming error to bring forth a sufficient record to support the claim. See *Estate of Bingham v. Nationwide Life Ins. Co.,* 7 Kan. App. 2d 72, 73, 638 P.2d 352 (1981), *aff'd as modified* 231 Kan. 389, 646 P.2d 1048 (1982), and cases cited therein.

Section 16 of the Kansas Bill of Rights relates to the banning of imprisonment for debt. Defendant's assertion of this as a ground for error is, at best, premature. The court hasn't ordered him to confinement. Should he eventually be so ordered, it would be because of his underlying crime which he might fail to offset should he not take advantage of the grace provided by his probation. Worthless check writing sounds of fraud as distinguished from debt. *State v. Haremza,* 213 Kan. 201, 515 P.2d 1217 (1973). As stated in *Haremza,* imprisonment for this conduct is not constitutionally prohibited by Section 16.

All parties were represented in person or by counsel in the hearing on these motions. Once again, no record is furnished to indicate that any due process was lacking. *Haremza* also holds that punishment provided for this crime does not violate provisions of the Fourteenth Amendment to the United States Constitution. 213 Kan. at 208.

As stated earlier, legislative history was of no assistance in resolving how our statute should be interpreted. Neither do we come up with any full answer by considering rules for statutory construction. K.S.A. 21-4610 begins by giving the trial judge broad powers in probation matters. There can be no question but that the statutory intent is for broad interpretation. Also, the law is clear enough that "[t]he fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute." *Kansas State Board of Healing Arts v. Dickerson,* 229 Kan. 627, 630, 629 P.2d 187 (1981).

Immediately, however, we face the fact that the broad grant of authority is "(1) Except as required by subsection (4)." It is in section 4 that we have the limitation of restitution "to the aggrieved party." In this stance, can it fairly be said that subsection (4) is one of the "all others" that is subordinated by the "fundamental rule?" We think not. The Oregon court faced the same question in *State v. Stalheim,* 275 Or. 683, 552 P.2d 829, 79 A.L.R.3d 969 (1976). So did the Court of Appeals of Colorado in

*People v. King*, 648 P.2d 173 (Colo. App. 1982). As in this case, those cases were ones of first impression in those respective states. In each instance the "aggrieved party" (Colorado uses the term "victim") language was held to be a limitation upon the general grant of power. While we will later disagree with the extent of limitation as found by those courts, we do agree that the words impose limitation to some degree as to the scope of power generally embraced in our statute.

K.S.A. 77-201 *Third* does give some expansion as to the term "aggrieved party." It states that where statutory language has the singular form it may be extended to include several. Thus, when two or more are injured parties, we assume restitution might be divided among them. But that doesn't answer the question of whether application extends to a secondarily or tertiarily aggrieved party. To utilize this statute, however, and then adopt the holding in a federal case, the reach of restitution would be extended that far.

*United States v. Follette*, 32 F. Supp. 953 (E.D. Pa. 1940), involved construction of 18 U.S.C.A. § 724 providing for restitution to the "aggrieved party or parties." The case held the statute was properly interpreted to allow restitution to a surety company which had reimbursed the victim of an embezzlement—a fact situation quite comparable to the facts in this case. In reaching this result, it first found that if the term "party" was to be strictly construed, it had to refer to a party in the criminal case: the prosecuting governmental unit.

Finding such a construction inconsistent with restitution, it concluded that in a proper case the terminology should include:

"[W]ithin its scope such persons as the owner of the contents of a letter stolen from the mail, the person defrauded by a scheme involving the use of the mails, the bank from which funds have been embezzled and the innocent person to whom a counterfeit note has been passed. *Each of these persons has been directly and financially aggrieved by the criminal acts of the defendants involved.*" 32 F. Supp. at 955. Emphasis supplied.

It seems to us that this holding is a proper and reasonable construction of the questioned language.

But not all courts have agreed with *Follette*. In *King*, for example, the Colorado court could not escape what *Follette* termed the "colloquial sense" of the word "party." *King* centered on whether an insurance company that paid a loss to a photographic equipment company resulting from an attempted theft

could be the recipient of restitution. The Colorado statutory provision used the term "victim," which we consider insignificantly different from the term "aggrieved party."

In *King,* most of the significant cases are classified as to their holdings. We agree with the classifications and they warrant reproduction:

"One line of cases extends payment of restitution beyond the immediate victim of the crime. *Shenah v. Henderson,* 106 Ariz. 399, 476 P.2d 854 (1970); *People v. Bond,* 99 Mich. App. 86, 297 N.W.2d 620 (1980); *State v. Green,* 29 N.C. App. 574, 225 S.E.2d 170, *cert. denied,* 290 N.C. 665, 228 S.E.2d 455 (1976); *Flores v. State,* 513 S.W.2d 66 (Tex. Crim. App. 1974). The other line of cases strictly limits the payment of restitution to the immediate victim or 'party whose rights, personal or property, were invaded by the defendant as a result of which criminal proceedings were successfully concluded.' *People v. Grago,* 24 Misc. 2d 739, 204 N.Y.S.2d 774 (Cty. Ct. 1960). *Accord: United States v. Clovis Retail Liquor Dealers,* 540 F.2d 1389 (10th Cir. 1976); *Karrell v. United States,* 181 F.2d 981 (9th Cir. 1950), *cert. denied,* 340 U.S. 891, 71 S.Ct. 206, 95 L.Ed. 646 (1950); *Montgomery v. State,* 292 Md. 155, 438 A.2d 490 (1981); *State v. Eilts,* 23 Wash. App. 39, 596 P.2d 1050 (1979), *aff'd,* 94 Wash. 2d 489, 617 P.2d 993 (1980)." 648 P.2d at 174-75.

The Colorado court concluded the latter cases were "more persuasive" and ordered restitution made to the photographic equipment company which had already been paid.

Perhaps the most interesting history of coping with this language problem occurred in Oregon. The first reported decision of *Stalheim* was that of the Oregon Court of Appeals, *State v. Stalheim,* 23 Or. App. 371, 542 P.2d 913 (1975), by which the trial court's restitution order was vacated. The case then went for review to the Oregon Supreme Court which affirmed the Court of Appeals. The trial court had ordered restitution to a man whose wife and daughter were killed as a result of defendant's vehicular criminal negligence. The majority opinion of the Court of Appeals went to the Supreme Court of Oregon burdened with a strong dissent similar to that expressed in a specially concurring supreme court opinion quoted later in this opinion.

It should be noted that the Oregon courts were faced with a second problem which we do not have: Restitution in cases involving death may relate to intangible, as distinct from special, damages. May not a defendant be entitled to production of evidence, cross-examination of witnesses, and a jury trial before the restitution amount is set? It is apparent that this factor was a strong influence in arriving at the Oregon decision holding that an indirectly injured party should not be allowed restitution.

Likewise, in a number of the cases quoted in the Colorado decision, indefinite or speculative damages are involved, and that factor emerges in those decisions as a strong inducement to not interpret "victim" or "aggrieved party" as anyone other than one originally and directly aggrieved.

Even so, the majority opinion in *Stalheim* indicates that the Oregon court recognized a close and difficult question was presented by their statute, Or. Rev. Stat. § 137.540(10), which provided for "restitution to the aggrieved party." One quotation will illustrate:

> "It must be admitted that the statute is drawn in general terms and is, therefore, susceptible to the broad interpretation urged by the state by which the court would be permitted to allow restitution or reparation in any reasonable amount which would be conducive to the defendant's rehabilitation consistent with the protection of the interests of the public. But the statute is equally susceptible to a narrower interpretation, limiting its application both as to the persons entitled to receive benefits under it and as to the character of the reparation or restitution which is to be made." 275 Or. at 686.

The specially concurring opinion stated in part:

> "The rule adopted by the majority properly limits 'restitution' and 'reparation' to 'liquidated or easily measurable damages' payable to the 'aggrieved party,' but limits that term to 'the direct victim of a crime.' I disagree with this further limitation in cases in which the 'direct victim' is a child or spouse who has died as a result of a crime.
> "Thus, if a child or married woman is assaulted and if, as a result, medical expenses are incurred, payment of such expenses could be required as a condition of probation, regardless of whether the bills for such expenses would otherwise be payable by the father or husband of the victim. But if the same victim then died, payment of the same bill for the same medical expenses could not be required.
> "In my view, it is far more reasonable in cases in which the 'victim' of the crime has died as a result of the crime to construe the term 'aggrieved party' to include the parents or spouse of the deceased 'victim,'  . . . ." 275 Or. at 690.

It does not surprise us that the decision was not well received by the Oregon legislature. In 1977, they promptly spelled out what they, at least at that time, meant by "aggrieved party":

> "(4) 'Victim' means any person whom the court determines has suffered pecuniary damages as a result of the defendant's criminal activities  . . . ." Or. Rev. Stat. § 137.103.

The change in language is noted as being directed to the court in *State v. Dillon,* 292 Or. 172, 637 P.2d 602 (1981). The opinion states that "the legislature reacted to *Stalheim* by enacting the [new] restitution statute" and that:

"Finally, subsection (4) was to supersede that portion of *Stalheim* which limited payment of restitution to the direct victim of a crime by defining a larger class of eligible beneficiaries." 637 P.2d at 605-06.

If more were needed, the Oregon experience would serve to convince us a broad interpretation of legislative language is proper, practical, and necessary. While *Dillon* cannot be held to say that the earlier Oregon statute was intended, when passed, to encompass the group included by the 1977 legislature, it carries a degree of that implication.

We recognize that determining the amount of restitution is a problem in some cases. For anyone interested, the new Oregon statute addresses that problem and our trial judges might want to consider guidelines it sets out. But that problem is not brought forward in the record in this case and we should not be influenced by it as some other courts have, causing them to be steered to a narrow interpretation of language. Neither do we believe that it enhances the image of justice for one who has compensated a directly affected party to have to negotiate with, and perhaps even to sue, the compensated party to be made whole. What if the compensated party is then judgment proof?

Recognizing that the holding in this case rises no higher than the facts in this case, we think of the maxim: The law does not require the doing of a useless thing. We do not believe that Williams should be required to take a circuitous route to accomplish what the trial judge in this case would have him accomplish so simply.

Finally, it seems to us that when Williams paid Wilson, Wilson was no longer the aggrieved party; Williams was.

Affirmed.

APPROVED BY THE COURT.