(714 P.2d 105)

No. 57,959

STATE OF KANSAS, *Appellee*, v. DONALD E. HICKS, *Appellant*.

Opinion filed January 30, 1986.

*Eric A. Stahl*, assistant public defender, for the appellant.

·*Kimberly Gee Vines*, assistant district attorney, *Clark V. Owens*, district attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before MEYER, P.J., REES, J. and FRED S. JACKSON, District Judge, assigned.

JACKSON, J.: The defendant, Donald E. Hicks, was charged with two counts of forgery in violation of K.S.A. 1984 Supp. 21-3710. Count I charged the defendant with making the check in question and Count II charged the defendant with having issued or delivered the check in question. The charges were brought under subsections (a) and (b) of the statute, respectively. Defendant was convicted by a jury on both counts and appeals.

At the trial of the case, the victim, Edmond Brown, testified that he had known the defendant for approximately two years and that he had leased an apartment to him. On August 4, 1984, defendant came to Mr. Brown's home to make a payment on the $259 debt he owed for damages to Mr. Brown's property. The defendant gave Mr. Brown a check for $349 which he said he received from a law firm as partial settlement on a car accident he was in. The check was made out to the defendant on the account of Gott, Young and Bogle, P.A., a Wichita law firm, and was signed "Gott Young." Mr. Brown did not know that "Gott Young" was not a real person connected with the firm. When Mr. Brown asked why all the names at the top of the check were not on the signature line, the defendant explained that they were not all on the case, only the man who worked for him. The defendant assured Mr. Brown that the check was good.

The defendant said he would pay $100 on his debt at that time and that he would get another settlement check on the 17th of August and pay the balance at that time. Mr. Brown took the check and gave the defendant the $249 difference between the amount of the check and the $100 paid on account. Defendant endorsed the check on the back and Mr. Brown deposited it.

On August 7, 1984, Mr. Brown received another check on the account of Gott, Young and Bogle, P.A., from a Charles Smith. The man who represented himself as Charles T. Smith was also known as James Gardner. Mr. Brown had seen Smith/Gardner with the defendant several times. Smith/Gardner told Mr. Brown that he was in the accident with the defendant, that he got a settlement like the defendant did and that the defendant told him Mr. Brown would cash the check. Smith/Gardner explained

that he did not cash the check at the store because he lost his driver's license.

After Mr. Brown had cashed Smith/Gardner's check, he noticed that the address Smith/Gardner had given was a vacant lot. Mr. Brown contacted the defendant to see if the check was good and was assured by defendant that he and Smith/Gardner had been in an accident together and that the check was good.

On August 14, 1984, the check given to Mr. Brown by defendant was returned by the bank. Mr. Brown called the law firm and spoke to Mr. Bogle, who came out to Mr. Brown's house. The checks were among some 25 checks which had been stolen from Mr. Bogle's law firm and were not signed by any authorized person. There was no such person as "Gott Young" associated with the firm. The firm had never represented either the defendant or Charles Smith. Mr. Bogle suggested that Mr. Brown go ahead and deposit the second check so it could be dishonored by the bank and prosecuted.

Detective Thomas Mayhill, a Wichita Police Department Documents Examiner, examined the check given Mr. Brown by the defendant and compared it to a known sample of defendant's handwriting. Detective Mayhill concluded that the defendant signed his own name on the back of the check and that it was highly probable that most of the writing on the face of the check was done by J. D. Portley. Detective Mayhill was not sure who signed the maker's signature "Gott Young" but it was not the defendant. On rebuttal, Mr. Brown testified that he knew J. D. Portley and that he had seen the defendant and J. D. Portley talking together sometime during the summer of 1984. Detective Roy Rains testified that, during his investigation of the case, he spoke to J. D. Portley, James Gardner/Charles Smith and Garland Martin and they indicated that they knew each other.

The defendant testified at trial that he got the check which he gave to Mr. Brown from a man he did not know who said his name was Garland Martin. On direct examination, he said he sold the man a transmission out of a Buick for $400 but on cross-examination, he said he sold the whole car. He testified Martin told him the $349 check on the law firm's account was out of petty cash. The defendant did not question that, in spite of the fact that defendant never thought Martin was an attorney and had no idea what kind of business Martin had, if any. Defendant testified he then took the check to Mr. Brown, told him the check

represented proceeds from the sale of a car transmission, and only mentioned he had been in an accident because he was wearing a brace. Mr. Brown then cashed the check and gave him $249.

Defendant testified he did not know J. D. Portley, whom Detective Mayhill had identified as the person who wrote the date, payee and amount on the check in question. Mr. Brown testified on rebuttal that the defendant had been with J. D. Portley, and that he had seen the defendant with Smith/Gardner several times. Mr. Brown also testified that he knew Garland Martin and had seen defendant in the company of Garland Martin.

After the jury found defendant guilty on both counts of forgery, the court ordered a presentence investigation. On January 17, 1985, the State moved to impose the Habitual Criminal Act on the basis of a prior federal felony conviction.

At the sentencing on February 13, 1985, the trial court over-ruled defendant's motion for judgment of acquittal. The State presented no documentary evidence of a prior felony conviction, but presented the testimony of Mr. Witham, the presentence investigator, who testified defendant told him he had previously been convicted of a federal felony. The trial court relied on this testimony to impose the Habitual Criminal Act and sentenced defendant to a period of not less than two years and not more than ten years on each charge, the sentences to run consecutively. Defendant was also ordered to make restitution in the amount of $249.

Defendant first contends in this appeal that the charges in Count I of "making" the check and Count II of "issuing" the check are multiplicitous because they are based on one check and that he cannot be punished twice for one offense of forgery.

Multiplicity is the charging of two or more counts where only a single criminal act is involved. *State v. Dorsey*, 224 Kan. 152, 578 P.2d 261 (1978); *State v. Garnes*, 229 Kan. 368, 372, 624 P.2d 448 (1981). K.S.A. 1984 Supp. 21-3107(1) statutorily allows charging a criminal defendant with multiple violations arising from a single transaction "[w]hen the same conduct . . . may establish the commission of more than one crime under the laws of this state . . . ."

The test to determine whether the charges are in fact mul-

tiplicitous is whether one offense requires proof of an element not necessary to prove the other offense. If so, the charges stemming from a single act are not multiplicitous. See *State v. Freeman*, 236 Kan. 274, 281, 689 P.2d 885 (1984); *State v. Chears*, 231 Kan. 161, 643 P.2d 154 (1982); *State v. James*, 216 Kan. 235, 531 P.2d 70 (1975).

In this case, defendant was correctly charged with violating subsection (1) (a) of K.S.A. 1984 Supp. 21-3710, which defines the crime of forgery as making, altering or endorsing any written instrument fictitiously or without authority. In Count II, defendant was charged with knowingly issuing or delivering a forged instrument in violation of subsection (1) (b) of the forgery statute.

The two offenses do not require proof of the same elements. Forgery under (1)(a) requires proof the defendant *made, altered,* or *endorsed* the check with the intent to defraud. Forgery under (1)(b) requires proof the defendant *issued* or *delivered* the check knowing it had been thus made, altered or endorsed.

This issue has been dealt with in prior decisions concerning the former forgery statutes. It has been repeatedly held that the crimes of forgery and uttering a forged instrument are separate and distinct offenses and conviction of one is not dependent upon conviction of the other. See *State v. White*, 207 Kan. 800, 803, 486 P.2d 1381 (1971); *State v. Murphy*, 145 Kan. 242, 65 P.2d 342 (1937).

In this case, the two charges against the defendant were not multiplicitous. Each offense requires proof of an element not necessary to prove the other.

The defendant next contends that the trial court erred in refusing to grant a judgment of acquittal on Count I when the State failed to produce any evidence that he "made" the check as charged in the information. Defendant argues the evidence at trial showing he *endorsed* the check does not support his conviction in Count I of *making* a check. Because the State never amended the charge in Count I from *making* to *endorsing* the check, defendant argues his motion for a judgment of acquittal should have been sustained.

On a motion for judgment of acquittal, the trial judge determines whether, from the evidence presented, a reasonable mind might fairly conclude that the defendant was guilty beyond a

reasonable doubt. If the judge concludes from the evidence that a reasonable mind might fairly decide that a defendant is guilty beyond a reasonable doubt, the case must go to the jury. On appellate review, the appellate court does not decide whether the evidence establishes guilt beyond a reasonable doubt but whether a rational factfinder could have found the accused guilty beyond a reasonable doubt. *State v. Fosnight,* 235 Kan. 52, 679 P.2d 174 (1984).

In this case, the evidence established the following:

1. The check was stolen;

2. The signature of Gott Young was unauthorized;

3. No person by the name of Gott Young worked at the firm of Gott, Young & Bogle;

4. Defendant was not a client of that law firm;

5. Defendant was payee on the check;

6. Defendant endorsed the check;

7. Defendant delivered the check to Mr. Brown;

8. A documents expert testified the handwriting on the face of the check did not belong to the defendant;

9. The expert did not know who signed the check as maker;

10. The expert testified it was highly probable the handwriting on the face of the check pertaining to the payee, the date and the amount belonged to a J. D. Portley;

11. Although defendant testified he did not know Portley, Brown testified he saw Portley and defendant together once in the summer of 1984;

12. Brown testified defendant represented the check was from a settlement of a lawsuit;

13. Defendant testified Garland Martin gave him the check when Martin purchased a 1973 Buick transmission from defendant.

There is a well-recognized presumption to the effect that one who utters or seeks to utter a forged instrument, without any reasonable explanation of how he acquired it, may be presumed to be the person who forged it, or an accessory to the forgery. *State v. Gates,* 196 Kan. 216, 410 P.2d 264 (1966); *State v. Johnson,* 189 Kan. 571, 370 P.2d 107 (1962); *State v. Murphy,* 145 Kan. at 242; *State v. Earley,* 119 Kan. 446, 239 Pac. 981 (1925).

The inference defendant is a guilty accessory to the commission of the forgery is applicable in this case in light of the

evidence. Defendant's explanation he received the check from a Garland Martin, who bought a car transmission, is certainly not reasonable in light of the facts Martin stated the funds were petty cash and the signature on the check was Gott Young and not Garland Martin. Nor is Brown's version of defendant's explanation to him reasonable. Brown testified defendant told him the check was a settlement from a lawsuit where that firm represented him. Yet a member of that firm testified defendant had never been their client. Additionally, defendant was charged as a principal in the information. A person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted the same as the principal. K.S.A. 21-3205; *State v. Payton,* 229 Kan. 106, 622 P.2d 651 (1981); *State v. Smolin,* 221 Kan. 149, 557 P.2d 1241 (1976).

Defendant next contends that the trial court erred in allowing the State to introduce hearsay statements concerning the connection of the alleged maker of the forged check and the man defendant claimed he got the check from. The statement in issue was elicited from Detective Roy Rains, who testified in substance that, during his investigation of the case, he spoke to J. D. Portley, James Gardner/Charles Smith and Garland Martin. The detective testified that the three indicated that they knew each other. Defendant contends the statement is inadmissible hearsay and the trial court improperly instructed the jury it was admitted to prove the statement was made and not to prove the three individuals knew each other.

In its brief, the State concedes that the statement in question is hearsay and we are unable to conclude that it fits any exception to the hearsay rule. The State now contends its admission constituted harmless error and that it was merely cumulative evidence.

"The defendant is entitled to a fair trial, but not a perfect one. The erroneous admission of evidence during a trial does not require reversal in every case. A conviction is to be reversed only where the erroneous admission of evidence is of such a nature as to affect the outcome of a trial so as to amount to a denial of substantial justice. *State v. Ambler,* 220 Kan. 560, 564, 552 P.2d 896 (1976); *State v. Farris,* 218 Kan. 136, 542 P.2d 725 (1975); K.S.A. 60-2105. Whether inadmissible testimony constitutes harmless or reversible error depends upon particular evidence and the circumstances of the case in which the question arises. *State v. Bradford,* 219 Kan. 336, 548 P.2d 812 (1976). Where evidence of guilt is of such direct and overwhelming nature that it can be said that erroneous admission of other evidence could not have affected the result of trial, such admission is

harmless error. *State v. Sullivan & Sullivan,* 224 Kan. 110, 578 P.2d 1108 (1978); *State v. Thompson,* 221 Kan. 176, 558 P.2d 93 (1976)." *State v. Turbeville,* 235 Kan. 993, 996, 686 P.2d 138 (1984).

The testimony that Portley, Gardner and Martin knew each other was not of such a nature to affect the outcome of the trial so as to deny defendant substantial justice. The effect of the testimony perhaps circumstantially impeached defendant's credibility but, recognizing it is the province of the jury to disbelieve defendant's credibility, there was a substantial amount of evidence introduced for the jury to disbelieve defendant's story. It suffices to say that there were numerous inconsistencies between defendant's testimony and that of other witnesses.

The admission of the hearsay statement was harmless error. In light of the inconsistencies in defendant's testimony, it cannot be said the statement affected the outcome of the trial.

The defendant next contends that the court erred in its instructions to the jury in several respects. He asserts that the court erred in instructing the jury on Count I that the defendant was charged with having "made, altered or endorsed" the check, when the State had only charged that the defendant did "make" the check in the information.

Count I of the information charged defendant with making the check. The jury instruction setting forth the elements of forgery under Count I stated in part:

"To establish this charge, each of the following claims must be proved:
1. defendant, or someone acting in concert with him, knowingly and with intent to defraud the First National Bank, or others,
    (a) made,
    (b) altered, or
    (c) endorsed a written instrument, a bank check, for $349, drawn on the First National Bank in Wichita."

Defendant's objection at trial to the instruction on Count I was based on the same contention as his motion for judgment of acquittal. He asserts he was charged with *making* the check which the State failed to prove. He argues on appeal that he was convicted on a charge not made in the information under the expanded instructions and was denied due process.

It is a general rule that instructions should be confined to the charge in the information and should be neither broader nor narrower. However, a violation may be excused where the rights of a defendant have not been prejudiced. *State v. Turbeville,* 235

Kan. 993. It is also a well-settled rule that the adequacy of instructions is to be determined by considering them as a whole, each in conjunction with all the other instructions. *State v. Trotter*, 203 Kan. 31, 453 P.2d 93 (1969).

After reviewing the record and the instructions given as a whole, we are unable to conclude that the expanded instruction violated the substantial rights of the defendant. There was evidence to support the giving of the aiding and abetting instruction because it was the expert's opinion that the handwriting on the face of the check in question belonged to J. D. Portley and there was evidence that defendant had been seen in the presence of Mr. Portley. The fact that defendant was charged as a principal in making the check does not make it erroneous for the trial court to give an instruction on aiding and abetting. *State v. Singleton*, 223 Kan. 559, 575 P.2d 540 (1978).

Defendant contends this case is similar to *State v. Reed*, 213 Kan. 557, 516 P.2d 913 (1973), where the expanded jury instructions constituted reversible error. There, the charge in the information was for corruptly influencing a witness *by threat*. The jury instructions stated the elements to be proved were that the defendant "deterred or attempted to deter [the witness] by threat or other means. . . ." Ruling the instructions were erroneous by the phrase "or other means" the court stated that phrase is vague and the charge should describe with particularity the "other means" defendant allegedly used in order for the defendant to defend against the charge. The expanded instruction of "making, altering, or endorsing" the check is not vague in the sense defendant was denied the opportunity to defend against the charge.

Defendant also relies on *State v. Chatmon*, 234 Kan. 197, 671 P.2d 531 (1983), in support of his argument. In that case, the defendant's conviction was reversed because he was convicted of the offense of battery which the trial court mistakenly instructed was a lesser included offense. The decision is clearly factually distinguishable from the case at bar.

Defendant also complains that the trial court failed to define the phrase "or someone acting in concert with him" in the instruction discussed above. The record reflects that defendant did not request such a definition. The failure to give such a definition is not a ground for reversal in the absence of a request

for it by the defendant. *State v. McMahan,* 131 Kan. 257, 291 Pac. 745 (1930).

K.S.A. 22-3414(3) provides:

"No party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he objects and the grounds of his objection unless the instruction is clearly erroneous."

Defendant argues the jury was misled by the two instructions: Count I stated defendant could be found guilty if he or someone acting in concert with him made, altered or endorsed the check; however, the instruction based on K.S.A. 21-3205 requires defendant to have *intentionally* aided, abetted, counseled or advised another before being found guilty as an aider or abettor.

Black's Law Dictionary explains that "a person is deemed to act in concert when he acts with another to bring about some *preconceived result.*" Black's Law Dictionary 262 (5th ed. 1979). (Emphasis supplied.) To "intentionally aid and abet" another would be similar. *I.e.,* there is a common design or plan and one party purposefully assists the other in its accomplishment.

When all the instructions are read as a whole, the phrase "or someone acting in concert with him" does not render the instruction clearly erroneous.

The defendant asserts that the trial court erred in giving its "theory of the case" instruction because it instructed the jury that defendant was guilty if he knew the law firm had not issued the check to him. The instruction stated:

"If you find the defendant endorsed the check, with intent to defraud the First National Bank or others, and
 (a) the check was not issued with the authority of Gott, Bogle & Young, P.A.; and
 (b) defendant knew Gott, Bogle & Young, P.A., had not issued the check to him; and
 (c) this occurred in Sedgwick County, Kansas, then the defendant is guilty of forgery (endorsing) as set out in count 1.
"If you find the defendant issued, or delivered, the check to Edmond Brown, with intent to defraud the First National Bank, or others, then defendant is guilty of forgery (by issuing or uttering) as set out in count 2.
"It is no defense that someone other than defendant may have made out part of the check.
"If the defendant believed the check was validly issued to him, and acted with no intent to defraud in endorsing and delivering the check to Edmond Brown, then he cannot be found guilty."

The record reveals defendant questioned part (b) of that in-

struction. The court added the last sentence and defendant's attorney stated "that would suffice." Where no objection is given to the instruction at trial, the instruction must be clearly erroneous to warrant reversal. *State v. Gasser,* 223 Kan. 24, 574 P.2d 146 (1977).

While it might have been preferable if the trial court had relied on the substance of PIK Crim. 2d 59.11 to define the elements of forgery in this case, after reviewing the instruction complained of, together with the other instructions as a whole, we are unable to conclude that it was clearly erroneous.

The defendant next contends that the trial court erred in imposing the Habitual Criminal Act when the only evidence of prior convictions was the testimony of a court services officer that defendant had told him during the course of the presentence investigation that he had a prior federal felony conviction. Defendant argues that the Habitual Criminal Act was imposed on the basis of incompetent evidence and that his Fifth Amendment right against self-incrimination was violated.

K.S.A. 1984 Supp. 21-4504(e) provides:

"A judgment may be rendered pursuant to this section only after the court finds from competent evidence the fact of former convictions for felony committed by the prisoner, in or out of the state."

The issue as to what evidence may be used to enhance sentencing has been discussed in a number of prior cases. A journal entry of former convictions (*State v. Messmore,* 175 Kan. 354, 264 P.2d 911 [1953]), and commitment papers from U.S. and state penitentiaries (*State v. Loyd,* 187 Kan. 325, 356 P.2d 825 [1960]), have been allowed. If the record of the prior felony conviction is silent regarding the presence of counsel or waiver thereof, it alone cannot be used to enhance the sentence. *State v. Duke,* 205 Kan. 37, 468 P.2d 132 (1970). The court has held documentary evidence is not necessary where the defendant testified and admitted the felony conviction. *Goodwin v. State,* 195 Kan. 414, 407 P.2d 528 (1965); *State v. Stubbs,* 195 Kan. 396, 407 P.2d 215 (1965); *State v. Lewis,* 195 Kan. 389, 405 P.2d 796 (1965) (overruled on other grounds, *State v. Bly,* 215 Kan. 168, 523 P.2d 397 [1974]); *State v. Engberg,* 194 Kan. 520, 400 P.2d 701 (1965), *cert. denied* 383 U.S. 921 (1966) (overruled on other grounds, *State v. Duke,* 205 Kan. 37, 468 P.2d 132 [1970]); *State v. Watkins,* 190 Kan. 446, 375 P.2d 634 (1962); *State v. Graham,*

172 Kan. 627, 242 P.2d 1067 (1952). Where the defendant and his counsel have admitted to prior felonies, that can be used to enhance. *State v. Ralph*, 194 Kan. 356, 399 P.2d 548 (1965).

The record in this case discloses that the State had not been able to obtain documentary evidence of a prior federal felony conviction for interstate transportation of forged securities at the time of sentencing. The trial court did not want to grant a continuance. Therefore, the State put Mr. Witham, the presentence investigator assigned to this case, on the stand to testify regarding the defendant's previous felony convictions. He testified to the effect that defendant admitted to 7 or 8 prior convictions, including the federal felony for forged securities which the State had given defendant notice it would use to impose the Habitual Criminal Act. There was no evidence to confirm this testimony nor was there any showing that the defendant had been represented by counsel at the time of the federal conviction.

Whether the information obtained from a presentence investigation can be used to enhance sentencing pursuant to the Habitual Criminal Act appears to be a case of first impression in Kansas.

In this case, the defendant's attorney admitted that defendant was "no stranger to the court system" but did not admit specific felony convictions. Mr. Witham's statements were made in the presence of defendant and the defendant did not dispute making the disclosures, but objected on the basis of the Fifth Amendment.

Defendant argues the Fifth Amendment should protect him from receiving a higher sentence based on a report which he was required to assist in compiling. The first case defendant cites, *Gardner v. Florida*, 430 U.S. 349, 51 L. Ed. 2d 393, 97 S. Ct. 1197 (1977), concerned the trial court's use of a confidential portion of a presentence investigation report which was not disclosed to defense counsel to impose the death sentence rather than the jury's recommended sentence of life imprisonment. Viewing death as a different kind of punishment along with the fact that the defendant had no opportunity to admit or explain the information in the report because the trial court did not detail the information, the court ruled defendant was denied due process of law.

*Gardner* is not applicable to the case at bar. Here, defendant's counsel read the report, as reflected by his remarks to the court, and defendant was given an opportunity to admit or explain that information when the court asked defendant if he had anything to say before the court imposed sentence.

Defendant also cites *Jones v. Cardwell*, 686 F.2d 754 (9th Cir. 1982). There, after conviction but before sentencing, while being interviewed by a State probation officer, the defendant confessed to an additional uncharged crime. That confession was then used to enhance the defendant's sentence. The court stated:

"It does not follow necessarily from this conclusion that every encounter between the state and a convicted but unsentenced defendant brings the Fifth Amendment privilege into play. But, where, as here, the state's agent seeks from the convicted defendant a confession of additional criminal activity and that confession is used to enhance a defendant's sentence, we think it beyond peradventure that the defendant may properly claim the protection of the privilege against self-incrimination." *Jones*, 686 F.2d at 756.

Furthermore, in *Baumann v. United States*, 692 F.2d 565, 578 (9th Cir. 1982), the court stated:

"[A] routine presentence interview of an individual convicted of a noncapital federal offense is not . . . a critical stage of the proceeding in which counsel's presence, or advice, is necessary to protect the defendant's right to a fair trial."

We are unable to conclude that the defendant's Fifth Amendment rights against self-incrimination were violated in this case. He voluntarily admitted to Mr. Witham the extent of his criminal record. There is nothing in the record to indicate Mr. Witham pressured or compelled the defendant to admit the convictions. He did not confess to any uncharged criminal activity. As defendant's counsel stated, he was no stranger to the court system and it is probable that he had experienced a presentence interview before and knew of its purpose.

However, we are constrained to hold that Mr. Witham's testimony did not constitute sufficient competent evidence under K.S.A. 1984 Supp. 21-4504(e) and the authorities cited above. A presentence investigation report is prepared to help the trial judge determine an appropriate sentence. It is not prepared to discover prior convictions for enhancement purposes. Here, neither the defendant nor his counsel admitted *in court* to any prior felony convictions. It should also be noted that there was no evidence of any kind produced to corroborate the statement made to the court services officer and there was no affirmative

showing that defendant had been represented by counsel at the time of the claimed felony conviction as is required by *State v. Duke*, 205 Kan. 37, Syl. ¶ 3.

Finally, the defendant contends that the trial court erred in ordering him to pay restitution at the same time it sentenced him to prison. We agree.

The journal entry 'of judgment reflects defendant was sentenced to two sentences of from two-to-ten years to run consecutively. It also reflects the trial court ordered the defendant to make restitution in the amount of $249 to the victim, Mr. Brown.

In *State v. Chilcote*, 7 Kan. App. 2d 685, 647 P.2d 1349, *rev. denied* 231 Kan. 801 (1982), the court held it is improper to order immediate restitution and incarceration at the same time because the two are not harmonious, and therefore the combination is not appropriate under K.S.A. 1984 Supp. 21-4603(2)(e). Restitution may only be ordered with probation or suspended sentence.

*Chilcote* is cited with approval in the later case of *State v. Dubish*, 236 Kan. 848, 696 P.2d 969 (1985). See also *State v. McNaught*, 238 Kan. 567, Syl. ¶ 7, 713 P.2d 457 (1986).

While the trial court may not order immediate restitution at the same time as incarceration, it may set guidelines as to the manner and amount of restitution in its journal entry. Those guidelines then aid the Kansas Adult Authority if it grants a defendant parole. K.S.A. 1984 Supp. 22-3717(j) states that when the authority orders parole it "shall order as a condition of parole that the parolee make reparation or restitution to the aggrieved party . . . in an amount and manner specified in the journal entry of the court that sentenced the inmate or, if not specified in the journal entry, in an amount and manner determined by the adult authority."

In this case, the State argues that the decision in *Chilcote*, 7 Kan. App. 2d 685, has been modified by the decision of the supreme court in *State v. Yost*, 232 Kan. 370, 654 P.2d 458 (1982). Apparently, the trial judge had adopted this view at the time he sentenced the defendant to incarceration as well as to pay restitution. The State's argument on this issue is without merit. In *Yost*, it was held that restitution ordered to be made to the "aggrieved party" includes a third party who was not the immediate victim of the crime. The defendant in that case was granted

probation subject to making full restitution to the victim. The defendant gave the victim a worthless check on the purchase of cattle. The victim, however, had been compensated by a third party, the person to whom the cattle were delivered for sale on consignment. The court allowed the third party to be substituted as the aggrieved party to whom the defendant was required to make full restitution. The supreme court's decision in *Yost* in no way modifies the holding in *State v. Chilcote*, 7 Kan. App. 2d 685.

The Oregon statute cited by the court in *Yost* specifically allows a combined order of restitution and incarceration. This statute was cited by the court in support of the proposition that the term "aggrieved party" should be broadly construed for the purpose of restitution. The Kansas statute, K.S.A. 1984 Supp. 21-4603(2), has been interpreted not to allow that particular combination of incarceration and restitution because it is not harmonious.

After reviewing the record in its entirety, we are obliged to conclude that the order of restitution made by the trial court was not advisory but was ordered immediately, contrary to the ruling in *State v. Chilcote*, 7 Kan. App. 2d 685.

Defendant's conviction is affirmed. The sentence as to restitution imposed by the trial court is vacated. Defendant's prison sentences as heretofore imposed by the trial court are vacated and the case is remanded to the trial court for resentencing of defendant.