(257 P.3d 780)·
No. 103,677

STATE OF KANSAS, *Appellee*, v. ADAM L. HAND, *Appellant*.

Opinion filed
May 6, 2011.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*Boyd K. Isherwood,* assistant district attorney, *Nola Tedesco Foulston,* district attorney, and *Steve Six,* attorney general, for appellee.

Before LEBEN, P.J., GREEN and ATCHESON, JJ.

ATCHESON, J.: This appeal presents us with a knotty issue regarding the scope of restitution for property crimes and, in particular, theft. We have found little in the way of directly applicable authority to guide us. What we have discovered leads us to conclude the trial court exceeded the governing statute and settled case law when it used the victim's increased insurance premiums to fashion a restitution amount without considering the value of the stolen property. The Kansas appellate courts have long favored fair market value as the benchmark for restitution in theft cases. We, therefore, vacate the restitution portion of the judgment and remand for further proceedings.

In this case, Defendant Adam Hand pled guilty to a burglary and four thefts in Sedgwick County District Court arising out of several criminal episodes. The trial court placed him on probation in September 2009 and ordered restitution to his victims. In one instance, Hand entered a home and stole the owner's big screen television. He pled guilty to felony theft for that escapade. The owner filed a claim with his insurance carrier and apparently was paid for his loss, less a $250 deductable. The insurance company, however, imposed an annual surcharge of $345 on the victim's policy for the next 3 years because of the claim.

The trial court ordered Hand to pay the owner $1,285, reflecting the deductible and the premium surcharge as restitution under K.S.A. 21-4610(d)(1). Hand, through his lawyer, objected to the surcharge as an appropriate restitutionary cost. The trial court did not consider whether the value of the television provided either the better or the required measure of restitution for a crime involving property loss. Hand has timely appealed the matter of restitution. He does not dispute the order insofar as he must pay the victim the $250 deductible amount not covered under the insurance policy. He submits the premium surcharge constitutes a legally improper item of restitution.

While a trial court acts in its sound discretion in a criminal case to determine the dollar amount of restitution and the manner in which payments shall be made, the same is not true of the more fundamental issue of what sort of costs may be assessed in the first place. *State v. Hunziker*, 274 Kan. 655, Syl. ¶ 2, 56 P.3d 202 (2002). The type of items appropriately considered for payment requires an interpretation of the applicable statute and, therefore, presents a question of law. 274 Kan. 655, Syl. ¶ 2. In considering a legal conclusion, the appellate courts exercise unlimited review and owe no particular deference to the conclusion of the trial judge. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010).

When a district court places a criminal defendant on probation, it must enter an order for restitution. K.S.A. 21-4610(d). The statute, in pertinent part, provides: "[T]he court shall order the defendant to . . . [m]ake reparation or restitution to the aggrieved party for the damage or loss caused by the defendant's crime . . . ." K.S.A. 21-4610(d). The question here boils down to whether the premium surcharge constitutes a damage "caused by" the crime. The legal term "causation" has varied meanings, some of which would suggest the theft might have caused the surcharge and others that would suggest not. *Cohen v. Battaglia*, 41 Kan. App. 2d 386, 399, 202 P.3d 87 (2009) (Under "but for" causation, an action is said to cause a result if that result would not have occurred except for the action.); compare *George v. Breising*, 206 Kan. 221, 227, 447 P.2d 983 (1970) (Even though an action may be an essential first step in a series of events leading to the result, that action may be a remote cause if there are intervening acts directly necessary for the result.). Plainly, the homeowner would not have faced a premium surcharge "but for" Hand's theft of the television. But the homeowner's decision to file an insurance claim was the direct cause of the surcharge.

Everyone in this case seems to agree that Hand would be responsible for paying the owner the value of the television as restitution. We do not understand Hand to argue that he should be relieved of that obligation. But the trial court never considered the value of the television set and, instead, substituted the premium surcharge as an alternative measure of the financial damage re-

sulting from the theft. Whether that decision amounts to a legally proper one poses the knotty issue. We are not, however, entirely adrift in reaching our conclusion. The Kansas appellate courts have addressed related restitution questions that offer significant guidance.

In *Hunziker*, the Kansas Supreme Court recognized that the trial judge properly assessed the fair market value of a backhoe as restitution where the defendant had destroyed the equipment. *Hunziker*, 274 Kan. at 664. The prosecutor did not present evidence of or request any restitution amount for increased insurance premiums so that issue was not before the court. But in that case, the court did reject the owner's request for fees he had paid a lawyer for guidance on how best to seek compensation for the financial losses associated with the destruction of the backhoe. 274 Kan. at 667. The court pointed out: " 'Not all tangential costs incurred as a result of a crime should be subject to restitution.' " (Quoting *State v. Beechum*, 251 Kan. 194, Syl. ¶ 3, 833 P.2d 988 [1992].) The court explained that the work of the lawyer did not aid in assessing the scope of the crime or the loss, as by tracing embezzled funds or recovering stolen property. Rather, the fees were "an indirect or consequential result of [the defendant's] crime." 274 Kan. at 667-68. The Kansas Supreme Court has also said K.S.A. 21-4610(d) requires "that the loss be caused by, not merely connected to, the crime of conviction" to be included in a restitution order. *State v. Dexter*, 276 Kan. 909, 918, 80 P.3d 1125 (2003).

The Kansas appellate courts have recognized that an insurance carrier paying losses under a crime victim's policy becomes "an aggrieved party" under the restitution statute. *State v. Schmitter*, No. 101,524, unpublished opinion filed January 29, 2010, slip op. at 2-3, *rev. denied* May 19, 2010; *State v. Coleman*, No. 92,302, unpublished opinion filed August 26, 2005, slip op. at 5; *State v. Reynolds*, No. 91,737, unpublished opinion filed May 27, 2005, slip op. at 2. See *Beechum*, 251 Kan. at 203 (The term "aggrieved party" in K.S.A. 21-4610 includes "a party secondarily aggrieved who ha[s] compensated the original aggrieved party."). In those instances, the trial court typically orders restitution to the insurance carrier to the extent of the loss paid and to the crime victim for any deductible

amount not covered under the policy. See, *e.g.*, *Schmitter*, slip op. at 2-3; *Coleman*, slip op. at 5; *Reynolds*, slip op. at 2.

In *State v. Hinckley*, 13 Kan. App. 2d 417, 419, 777 P.2d 857 (1989), this court held that requiring a defendant to pay the replacement cost of a stolen item less 15 percent rather than the fair market value of the property resulted in an improper restitution order. The court concluded that using replacement cost as a benchmark "clearly requires the defendant to pay a sum of money in excess of the amount of damage his criminal conduct caused the victim." 13 Kan. App. 2d at 419. Similarly, this court later relied on *Hinckley* to conclude that the proper restitution amount for damaged property "should not exceed the reasonable market value . . . immediately before the damage." *State v. Casto*, 22 Kan. App. 2d 152, 154, 912 P.2d 772 (1996).

In *State v. Maloney*, 36 Kan. App. 2d 711, 714, 143 P.3d 417, *rev. denied* 282 Kan. 794 (2006), this court stated: "Generally, the fair market value of property at the time of its taking, rather than the replacement cost, is the proper measure of restitution." Maloney pled guilty to stealing an array of household goods the victim had placed in storage temporarily while she moved from one residence to another. Many of the items were decidedly used, and some had no readily apparent market value. The court went on to hold that if property lacks a calculable fair market value, a restitution amount may be based on other factors related to a reasonable value of that property. 36 Kan. App. 2d at 715. The court explained the proper restitution determination this way:

"We are not departing from the general rule that the proper measure of restitution in a theft case is the fair market value of property at the time of its taking, rather than the replacement costs, whenever the fair market value can be ascertained. However, when there is no readily ascertainable fair market value for personal property taken in a theft, the district court may consider other factors in determining restitution, including the purchase price, condition, age, and replacement cost of the property, as long as the valuation is based on reliable evidence which yields a defensible restitution figure." 36 Kan. App. 2d at 715.

This court was highly critical of and reversed a restitution order in a theft case based on the victim's testimony as to the replacement

cost of the stolen items rather than their fair market value. *State v. Rhodes*, 31 Kan. App. 2d 1040, 1041-42, 77 P.3d 502 (2003). The *Rhodes* decision recognizes the guiding star in arriving at restitution awards in theft and other property crimes must be fair market value. 31 Kan. App. 2d 1040, Syl. ¶ 2 ("The measure of restitution to be ordered is the amount that reimburses the victim for the actual loss suffered. Fair market value would be the usual standard.").

The case most analogous to the circumstances here appears to be *State v. Caldwell*, No. 89,276, unpublished opinion filed February 20, 2004, slip op. at 4-5, in which this court rejected an increase in premiums for a fleet insurance policy as the proper measure of restitution when the defendant made off with a rental car and then pled guilty to misdemeanor theft after the car turned up abandoned in Spokane, Washington. The insurance policy covered 31 cars in the company's rental fleet. And a company official testified that the insurance premium went up nearly $6,000 in the year after the claim was submitted on the car Caldwell had stolen.

While the court found the proof of the premium hike less than compelling, it also held that the insurance increase was not the sort of cost that could be recovered under K.S.A. 21-4610(d). *Caldwell*, slip op. at 4. The court stated: "First and foremost, we question whether as a matter of statutory construction an increase in insurance premiums attributable to the defendant's crime is recoverable under K.S.A. 2003 Supp. 21-4610(d)(1)." *Caldwell*, slip op. 4. The court cited *Hunziker*, 274 Kan. at 655, Syl. ¶ 9, to the effect that "tangential costs" associated with a crime ought not be included in a restitution order. *Caldwell*, slip op. at 4. The court held that "as a matter of law, increased premiums for fleet insurance are indirect or consequential damages not intended to be recouped" as restitution. *Caldwell*, slip op. at 4. Apart from issues of proof specific to the case, the *Caldwell* court expressly rejected premium increases on commercial insurance policies as a legally appropriate measure of restitution in criminal cases. The broader holding of *Caldwell* on that legal point, placing increased insurance premiums outside the scope of restitution for property crimes, encompasses individual homeowner or renter policies.

From those cases, we may distill several principles that guide us in resolving the particular issue posed here. First, in determining restitution for a property crime, such as theft, the courts have shown a distinct and overwhelming preference for measuring the appropriate dollar amount by the fair market value of the property itself. Replacement value has been rejected in favor of market value. Even when the market value may be difficult to determine, the courts are to look at a range of factors bearing on value, including the age of the item, its condition, and replacement cost to arrive at an estimated figure for restitution. That suggests some more exotic alternative—increased insurance costs, for example—generally would be unacceptable.

There might be some peculiar set of circumstances in which fair market value or some rough approximation of it would be so difficult to determine or so unreliable that a court might have to rely on an entirely distinct means of calculating loss for restitution purposes. But that case is not this one. As we noted, the trial court made no effort to determine a fair market value of the television. The precedent in Kansas strongly suggests that should have been the court's first approach, especially in the face of an objection to use of the insurance surcharge. We infer from the record that the victim's insurance company paid the claim on the stolen television, otherwise there would have been no basis for the surcharge. The amount the insurance company paid out should have provided at least a sound starting point in establishing the value of the television. In short, we see no reason here to deviate from what has been described as the general practice of using fair market value of the property in assessing restitution. *Maloney*, 36 Kan. App. 2d at 715.

Second, in that vein, the Kansas courts have opted to require restitution to an insurance company, as a secondary "aggrieved party," in an amount tied to what the company has paid out under the victim's policy for the claimed loss. In those circumstances, an insurance company (or another entity or person) compensating a victim for his or her financial loss generally acquires the victim's statutory right to restitution. See *State v. Yost*, 232 Kan. 370, 374-75, 378, 654 P.2d 458 (1982) (A business associate of a criminal defendant was entitled to statutory restitution as an aggrieved party

after he paid the victim the amount lost when the defendant passed a worthless check to purchase cattle.). Why the third party intercedes to compensate the victim is largely beside the point. But when that happens, the courts have not opted for some different measure of restitution. They adhere to the preference for restitution based on the value of the property. And the victim remains entitled to any shortfall in that third-party payment, such as the deductible amount in an insurance policy.

The courts have found that approach to be an adequate and legally proper make-whole remedy serving to fairly compensate the victim, on the one hand, and to help rehabilitate and deter the defendant, on the other, all as contemplated in K.S.A. 21-4610. *Hinckley*, 13 Kan. App. 2d at 419. Basically, the criminal defendant should not be absolved of the act of paying restitution because someone else has compensated the crime victim. That makes sense, especially when the defendant's performance of the obligation also entails noneconomic purposes associated with rehabilitative and deterrent functions of the criminal justice process. At the same time, however, the courts have not suggested a defendant should be obligated for a greater amount of restitution simply because a third party has stepped into the picture.

Again, nothing in this case indicates the accepted approach should have been cast aside or would have been unworkable. While we hesitate to speculate on insurance rate-making practices, we suppose that the premium surcharge might have been rescinded upon a restitution order requiring Hand to pay the insurance company an amount approximating the claim or rebated upon completion of the restitution payments in the amount of the claim. Were it otherwise, the insurance carrier would realize a windfall.

Finally, the cases establish that pure "but for" causation does not govern what costs may be included in a restitution order. In other words, simply because a crime victim incurs certain costs that he or she would not have but for the defendant's criminal conduct, those costs do not automatically or necessarily become proper items for inclusion in a restitution order. Rather, permissible costs cannot be too remote from or tangential to the crime. Merely a

"connection" between the crime and the cost is legally insufficient. *Dexter*, 276 Kan. at 918.

Clearly, a court would err if it allowed restitution based on the victim's decision to buy a superior—and more expensive—replacement for the stolen property. A victim could not buy a $5,000 home theater system to replace a stolen $1,000 big screen television and expect restitution for the cost of the new gear on the notion that "but for" the crime the purchase would have been unnecessary. Conversely, the victim could buy a smaller replacement television for $600. Those are choices the victim would be free to make, but they should not affect the restitution permitted under K.S.A. 21-4610. Either way, the victim would still be entitled to restitution from the criminal defendant equal to the fair market value of the lost property.

Crime victims similarly may choose to hire lawyers to consult on their rights in the civil and criminal justice processes related to the most effective means of seeking compensation for their losses. But the financial costs of that choice cannot be passed on to the criminal defendant. Although those costs would not have been incurred in any given case but for the defendant's criminal actions, they are too remote or tangential to the crime to be properly included as restitution. The costs are a direct product or result of the victim's independent and discretionary decision to seek legal assistance.

Neither the restitution statute nor the Kansas cases draw a bright line as to what may properly be considered a "damage or loss caused by [a] crime." They probably could not do so very effectively given the wide range of criminal offenses and potential damages or costs. But in the realm of property crimes, which frequently fit a common pattern especially as to losses, the courts have settled on some fairly well-developed applications of the law. Within those applications pertaining to theft and related crimes, we view the insurance premium surcharge at issue here as being outside the established bounds for restitution. It may be likened in relevant respects to the attorney fees that have been disallowed. The victim of a property crime may choose to submit a claim to his or her insurance carrier. That is an independent and discretionary choice akin to hiring a lawyer. Depending upon the policy and the un-

derwriting practices of the company, that choice may have economic consequences beyond payment of the claim. The crime victim can assess those consequences and pick a course of action. All of that is ultimately tangential to the cost or damage occasioned by the crime itself, which the appellate courts have repeatedly said should be measured by the fair market value of the lost property absent some extenuating or highly unusual circumstances.

This case displays no peculiar or unique attributes distinguishing it from typical burglary-theft prosecutions. And, in turn, nothing suggests the guidance of the Kansas appellate courts on restitution in those cases should be discarded here. Given that authority, notably the reasoning in *Caldwell*, we conclude the district court erred as a matter of law in basing the restitution order on the amount of the premium surcharge rather than the fair market value of the stolen television.

Even if we were obligated to review the trial court's decision under an abuse of discretion standard, we would find reversible error. A trial court may be said to have erred in that way when its decision " 'goes outside the framework of or fails to properly consider statutory limitations or legal standards.' " *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009) (quoting *State v. Shopteese*, 283 Kan. 331, 340, 153 P.3d 1208 [2007]). In this case, the trial court did not even look at fair market value of the television as a possible measure of restitution, thereby effectively ignoring and breaking with the settled standards we have outlined. The failure to consider that approach at all or to offer some basis for disregarding it in favor of an alternative determination of restitution constitutes error.

We do not foreclose the possibility that given some extraordinary set of facts (beyond our ability to conjure hypotheticals) a trial court properly might allow an increase in insurance premiums as a restitution cost for a property crime. Maybe something involving a defalcating corporate officer would tilt in that direction so long as the court explained why. But the theft of a television doesn't travel very far down that road.

Likewise, what we have said here should not be construed as or extended to some application of the law on restitution in cases

involving physical or emotional injury to the crime victims. Those harms present different fact patterns and legal considerations in fashioning restitution awards. We do not presume or intend to address them here.

The restitution order in this case is vacated. The case is remanded to the district court for further proceedings to determine a restitution amount based on the fair market value of the stolen television and any other legally permissible costs or damages caused by the theft. If a fair market value cannot be determined for the television, the district court shall otherwise determine a restitution amount that conforms to Kansas law.

\* \* \*

LEBEN, J., dissenting: K.S.A. 21-4610(d)(1) provides for restitution "for the damage or loss caused by the defendant's crime." That seems straightforward enough: the district court concluded from the evidence before it that the insurance premium of the victim of Adam Hand's crimes was hiked by $345 each year for 3 years as a result of those crimes. So the statute seems to authorize recovery of the increased premiums, a loss to the victim caused by the crime.

Notwithstanding the plain language of this statute, the appellate courts of Kansas have recognized that there are some limits here. So, for example, a crime victim may not recover the costs of an attorney hired to provide advice to the victim about the criminal prosecution—which is prosecuted by an attorney representing the State, not the victim. *State v. Hunziker*, 274 Kan. 655, 667-68, 56 P.3d 202 (2002). The *Hunziker* court advised that "tangential" costs are not recoverable. 274 Kan. at 667.

What exactly is meant by "tangential" is not altogether clear, but that word is not found in K.S.A. 21-4610(d)(1), and our Supreme Court has emphasized in recent cases that words not found in a statute generally should not be added when interpreting that statute. *E.g., Hill v. Kansas Dept. of Labor*, 292 Kan. 17, 23, 248 P.3d 1287 (2011); *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607-08, 214 P.3d 676 (2009). Moreover, applying standard methods of statutory interpretation to our case suggests that the

plain language should be held to mean what it says—that these increased insurance premiums, which the district court found were caused by the defendant's crime, are recoverable in restitution.

Every statutory-interpretation case must start with the statute's words. As I've already noted, this statute provides restitution "for the damage or loss caused by the defendant's crime," and it lacks stronger language like *"directly* caused by the defendant's crime" or an exception for incidental, consequential, or tangential losses.

Next up for consideration is the statute's purpose. A primary purpose of restitution is to make the victim whole. *State v. Rhodes*, 31 Kan. App. 2d 1040, 1041-42, 77 P.3d 502 (2003). Here lies my disagreement with the majority. In its analysis, "the homeowner's decision to file an insurance claim was the direct cause of the surcharge," and the homeowner has been made whole through recovery of the value of the television—less the deductible—from the insurance company plus a restitution award for the amount of the deductible.

But if the purpose of restitution is to make a crime victim whole, do we really want to penalize a crime victim who insures against theft losses? I think not. A person who has no insurance—or who chooses to seek restitution rather than rely first upon insurance coverage—leaves his or her recovery to the chance that (a) the defendant will be found guilty beyond a reasonable doubt, (b) a restitution order will be entered, (c) a convicted criminal will, while on probation, earn enough money to pay the restitution amount in full, and (d) that convicted criminal will, while on probation, choose to pay the restitution in full. Under that view, much must go right for the victim to be made whole, as our legislature intended.

Under the majority's view, the crime victim in Hand's case, who had insurance, recovers the fair-market value of the television set (with $250 of that amount coming through the restitution order), but that recovery will be offset by higher insurance premiums of $1,035 over the next 3 years. I believe that the district court's authority to enter a restitution award "for the damage or loss caused

by the defendant's crime" is sufficient to sustain the district court's restitution order for the increased insurance premiums this crime victim must pay.

I would therefore affirm the district court's restitution order.