NOT DESIGNATED FOR PUBLICATION

No. 125,523

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ISAAC MASON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Kiowa District Court; LAURA H. LEWIS, judge. Submitted without oral argument. Opinion filed July 19, 2024. Affirmed.

*Grace E. Tran*, of Kansas Appellate Defender Office, for appellant.

*Chay Howard*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ATCHESON, P.J., ISHERWOOD and HURST, JJ.

HURST, J.:  After leading multiple police officers on a high-speed pursuit that ended in a crash, Isaac Mason pled no contest to one count of fleeing or attempting to elude a police officer while engaging in reckless driving. In addition to his term of incarceration, the district court ordered Mason to pay a large amount of restitution to reimburse an insurance company for claims resulting from the collision. Mason exclusively appeals the district court's restitution order. Mason alleges that (1) the district court erred in finding his conduct caused the crash; (2) the district court erred in ordering restitution to an insurance company; and (3) the district court abused its discretion by

1

ordering an unworkable restitution plan. None of Mason's challenges are meritorious, and the district court's restitution order is therefore affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

On October 31, 2019, after observing Mason driving his motorcycle at 130 miles per hour on a highway with a speed limit of 70 miles per hour, Kansas Highway Patrol Trooper Micah Polson pursued Mason. Trooper Polson activated his patrol car's emergency lights and siren, but Mason continued to elude him—driving at speeds over 100 miles per hour. As the pursuit continued, Trooper Polson observed Mason pass another vehicle in a no-passing zone and then cross the center line on a two-lane highway to drive between two passing vehicles.

As Mason entered the city limits of Pratt, Undersheriff Charles McCann and Deputy Tyler Finch of the Kiowa County Sheriff's Office became the primary pursuers. Undersheriff McCann and Deputy Finch created a roadblock on the highway using their patrol cars with emergency lights activated. Mason swerved around the patrol cars and continued driving down the highway with the pursuing officers driving more than 140 miles per hour. As Mason eluded the officers, Deputy Finch observed him driving on the shoulder; failing to use his turn signal; passing in no-passing zones; crossing the center line; and generally driving recklessly. Once Mason exited the city limits of Pratt, Trooper Polson resumed pursuit, during which he reached speeds of about 140 miles per hour trying to catch up to Mason and, at one point, radared Mason's speed at 144 miles per hour. Trooper Polson's superior officer instructed him to terminate the pursuit.

As Mason approached Greensburg with the Kiowa County officers still in pursuit, Undersheriff McCann was driving at 148 miles per hour and was still unable to catch Mason. Deputy Finch had his patrol car's emergency lights and siren activated during the pursuit, but Undersheriff McCann did not and was not wearing his seatbelt. Both Mason

2

and Undersheriff McCann slowed down to navigate two curves in the road as they entered Greensburg. At that point, Mason was about one city block ahead of Undersheriff McCann when he abruptly braked and swerved to the left. To avoid hitting Mason, Undersheriff McCann swerved further to the left into the oncoming lane, passed Mason, overcorrected, veered off the road, and crashed into a ditch. Portions of the pursuit and crash were captured on both Undersheriff McCann and Deputy Finch's patrol car dash cameras. Mason again took off with Deputy Finch still in pursuit, but Deputy Finch's superior officer instructed him to terminate the pursuit. Mason was later apprehended and charged with a litany of crimes related to the incident.

Undersheriff McCann testified at Mason's preliminary hearing that Mason caused him to crash because "[Mason] hit the brakes in front of me." According to Undersheriff McCann, the crash put him into a coma for a couple of days and resulted in several severe injuries, including facial lacerations; a broken nose; a broken mandible; a broken foot; a broken leg; a broken and dislocated ankle; spider fractures on his cheek; cuts on his foot; a concussion; and some memory and forgetfulness issues. McCann admitted that he violated a policy of the Kiowa County Sheriff's Office during the pursuit by speeding through town at over 100 miles per hour without his patrol car's lights or siren activated. He also testified that his doctor said that wearing his seatbelt would not have prevented his injuries because his patrol car's transmission came up through the floor and broke his leg.

McCann testified that Mason would have known police officers were behind him because Mason passed the officers' roadblock and had been eluding police for a significant distance at the time of the crash. Undersheriff McCann further testified that "[a]s hard as [Mason] hit the brakes and—and veered over to the left, I think it was intentional." McCann believed he lost control of his vehicle because "[Mason] hit the brakes, and I went around him not to hit him, and the back end broke loose. That's—that's it."

3

Deputy Finch testified that he observed Mason "slam on his brakes" and "the whole bike lean forward, and he had started moving over to the left where Undersheriff McCann was." Deputy Finch described Mason's deceleration was "a very, very hard brake." "Undersheriff McCann took an evasive maneuver and swerved to avoid [Mason], and then overcorrected and crashed his patrol vehicle."

The dash camera footage from both Undersheriff McCann and Deputy Finch's patrol cars was introduced, viewed, and admitted into evidence during the preliminary hearing and available to this court in the record on appeal. Both officers stated in their testimony that they more clearly observed the incident in person than how it was depicted in their patrol cars' dash camera footage. Deputy Finch explained that "[t]he video is a much smaller screen than my eyesight." Undersheriff McCann answered, "The video shows what a camera picks up. But, the—when you're in the moment, no, it's not the same as on the video, absolutely not." Deputy Finch testified that he observed in the footage that Mason "slammed on his brakes when Undersheriff McCann was coming into town, and swerved in—going into the left when he was trying to avoid him." Deputy Finch also testified that Undersheriff McCann's patrol car's dash camera footage showed Mason's brake lights illuminating and Mason swerving.

Deputy Finch's patrol car dash camera footage is particularly unhelpful. McCann's video, however, does generally show Mason suddenly slowed down and moved to the left as Undersheriff McCann approached him on the curves entering Greensburg. Although there is not a clear view of the crash, this court's review of the available footage is generally consistent with the officers' testimony and does not contradict their testimony.

Several of the other officers who testified at Mason's preliminary hearing— including Trooper Polson, Deputy Finch, Kansas Highway Patrol Master Trooper Edward Grover, and Kiowa County Sheriff's Office Sergeant Justin Rugg—had exchanges with Mason's attorney about how Undersheriff McCann's own conduct

might have caused or contributed to the crash. Trooper Polson noted the safety concerns associated with driving 100 miles per hour through a city or town. Trooper Grover testified that it was inconsistent with his training to drive 100 miles per hour in a 30 miles-per-hour zone and to not wear a seatbelt while driving. Sergeant Rugg confirmed that his training and experience dictated that— for the safety of officers and others—officers should use lights, sirens, and seatbelts when in "hot pursuit" of a suspect at high speeds. Deputy Finch confirmed that Undersheriff McCann could have lost control of his patrol car because he was driving over 100 miles per hour in an area zoned at 30 miles per hour while not wearing a seatbelt. Undersheriff McCann himself confirmed that it was possible he could have retained control of his patrol car had he been driving at a slower speed.

In March 2022, Mason pled no contest to one felony count of fleeing or attempting to elude a police officer while engaging in reckless driving, in violation of K.S.A. 2019 Supp. 8-1568(b)(1)(C). The State initially requested over $300,000 in restitution for four claims. Three claims were from Kiowa County's insurance provider, EMC Insurance Companies (EMC): (1) $37,726.98 for Undersheriff McCann's wrecked patrol car; (2) $2,027.50 for a sign damaged during the crash; and (3) $278,825.17 for the paid workers compensation claims for Undersheriff McCann's lost wages and medical treatment. The final claim was from Kiowa County for its $500 insurance deductible on the patrol car. After hearing conflicting arguments, the district court continued sentencing to consider the issue and permit the parties to present evidence on restitution. Mason subsequently filed a written objection to restitution.

At the second sentencing hearing, after reviewing the preliminary hearing transcript and dash camera footage, the district court found:

5

"[B]ased on both the transcript, the testimony that was provided in the preliminary hearing, as well as the videos that I was able to observe, I would find that the wreck of the officer's vehicle was that but for the Defendant's actions, that wreck would not have occurred."

A casualty claims specialist with EMC testified at the July 2022 sentencing hearing regarding the claims that EMC paid resulting from the crash and that Kiowa County had to pay a $500 deductible.

Mason testified that, at the time of the hearing, he had been unemployed for about three months and only had $200 in his bank account for regular bills. Mason was asked by his attorney, "Are there any job prospects on the horizon that are going to give you the ability to pay $300,000.00 over the next 12-months?" Mason responded, "I can't say for certain for the future. So, not currently." Mason testified that, at the time, he did not have the ability to pay even $10,000 in restitution. Mason testified that he made about $3,400 per month at his most recent job but did not currently have any job prospects. He elaborated, "It's been about three months since I had that job. And I still haven't been able to find current employment due to COVID and other competition in the workforce." At the time of the hearing, Mason was a part-time student, actively applying for jobs and seeking unemployment benefits. Mason testified that he had received calls about interviews and anticipated those jobs would pay "[a]nywhere between 14 to $20.00 an hour."

Mason was ultimately sentenced to 12 months of probation with an underlying prison term of 6 months. The district court then explained its restitution order:

"Restitution is something, Mr. Mason, that is always a little bit tricky for the Court to determine, because the purpose of restitution is to make an attempt to make the victims, in whatever case, whole, okay. So, that's—that's the purpose of what restitution is geared towards, okay.

6

"So, in this case, it's not as clearcut as most cases, because, obviously, as your attorney has pointed out numerous times, as the DVDs show, the videos show, the officer did some things that he was in the wrong, as well.

"He—he was not following procedure in regards to some things. So, clearly, he has some negligence and—and some responsibility for what happened as well, okay.

"But, as I stated at the very beginning of this hearing, but for your actions, meaning had you not been doing the things that you were doing, that officer would not have ever been placed in that situation, and that—his wreck would not have ever have occurred had he not been pursuing you while you were committing this crime of fleeing or eluding."

***

"So, that officer, yes, he's responsible for his actions. And, you're responsible for your actions, okay.

"So, I am going to order, I believe, what is fair in this case for restitution. I believe that you should be responsible for reimbursing back the county, Kiowa County, for the costs of the damage to the vehicle, the $37,726.98.

"And, although I do believe that it would also be within the realm of fairness to require you to reimburse back at least a portion of the medical expenses, for the injuries that the officer sustained, I'm very cognizant that you are young. You don't have a lot of income or earning capacity at this point in your life.

"And, quite honestly, what is boils down to is that the county has insurance for a reason. Workers compensations insurance, that's the purpose of it, okay. That's part of that function.

"So, I'm going to order that you pay the reimbursement for the vehicle damage.

"I'm also going to order that you pay the $2,027.50 reimbursement back to the Iroquois Center, as they were completely unrelated and an innocent party in this, and they do need to be reimbursed back for their sign.

"So, well, I guess, actually, they've already been paid back. So, you're going to reimburse back the insurance company, or Kiowa County, for the proceeds that were paid out towards the Iroquois Center for the damaged sign.

"The remainder of the workers comp claim for both the lost wages and the medical costs will, then, fall on Kiowa County through their workers comp insurance.

. . . .

"I am not making an order that [the $500] deductible be reimbursed back to Kiowa County."

The district court then established a minimum payment plan for Mason to begin making payments towards the restitution order:

"[District Court:] Mr. Mason, we are required that whenever an order of restitution is put into place, you do have to set up some kind of a minimum payment plan.

"Now, obviously, you can pay more as your situation allows. But, do you have an amount that you believe that you could afford, at this point in time, to start paying towards that?

"[Mason:] I do not.

"[District Court:] Mr. Kerns, do you have something that you could suggest on your client's behalf?

"[Mason's Attorney:] Could we start with, like, 100 bucks a month, or 200 bucks a month, whatever?

"[District Court:] Mr. Howard, does State have any objection?

"[Mason's Attorney:] Obviously, it will go up if he gets a job.

"[State's Attorney:] Yeah. I guess, at this point, Your Honor, I don't—I guess State would have no input as to the—the plan.

"[District Court:] Okay. All right. Mr. Mason, I'm going to go ahead and order that, for now, you need to start paying $100.00 a month towards the restitution costs.

"You can develop a payment plan with your probation officer to—to address this and your other fees.

"Like I said, as you increase your earning capacity, or get a job, your income, you can always pay more towards that.

"But, I think, right now, given your situation, that that's fair. That's a fair amount to have you pay."

The district court's journal entry reflected its oral restitution decision, ordering Mason to pay a total to EMC of $39,754.48:  $37,726.98 for the patrol car and $2,027.50

8

for the sign. The journal entry also reflected the district court's decision that Mason pay $100 per month as the starting rate. Mason appealed the district court's restitution order.

DISCUSSION

Mason challenges the district court's restitution order, claiming the district court erred by (1) finding Mason's conduct was the legal cause of Undersheriff McCann's crash; (2) awarding restitution to an insurance company; and (3) abusing its discretion by ordering an unworkable restitution plan. This court will address each claim but must first address the parties' procedural objections that they argue preclude this court's review.

I.      MASON'S CLAIMS ARE PROPERLY BEFORE THIS COURT

Mason claims the district court erred by not explicitly stating his conduct was the legal cause of the crash, and, thus, this case must be remanded. The State also argues this case is not properly before this court but claims it is because Mason failed to preserve his claims for appeal and thus the case must be dismissed. Neither alleged error precludes this court's review.

Kansas Supreme Court Rule 165 requires the district court to state its findings of facts and conclusions of law on contested matters on the record. 2024 Kan. S. Ct. R. at 232; see K.S.A. 2023 Supp. 60-252. While the district court never explicitly stated that Mason's conduct was the legal cause of the crash, Mason failed to object to the alleged inadequacy of the district court's findings or conclusions. The Kansas Supreme Court has emphasized that it is the aggrieved party's "responsibility to ensure the district court makes the factual findings necessary for appellate review." *State v. Espinoza*, 311 Kan. 435, 436-37, 462 P.3d 159 (2020); see also *State v. Patterson*, 311 Kan. 59, 72, 455 P.3d 792 (2020); *State v. Sanders*, 310 Kan. 279, 290, 445 P.3d 1144 (2019) ("A party must object to inadequate findings of fact or conclusions of law to preserve the issue for

9

appeal."). Therefore, Mason cannot fail to object to inadequacies in the district court's factual findings and then claim those inadequacies require reversal or remand on appeal. When a party fails to object to the alleged inadequacy of a district court's factual findings and then seeks appellate review, "an appellate court can presume the district court found all facts necessary to support its judgment" and address the appeal. *Sanders*, 310 Kan. at 290. This court only needs to remand for such an inadequacy when the record does not support the presumption and the lack of specific factual findings precludes meaningful appellate review. 310 Kan. at 290. That is not the case here where the record is bursting with evidence supporting the district court's determination.

In a similar vein, the State seeks dismissal of Mason's claims "that the Court utilized the wrong legal standard and that the Defendant's actions were not the 'legal' cause of the accident," arguing Mason failed to preserve those claims because he did not object to the sufficiency of the district court's factual findings or file a motion to amend pursuant to K.S.A. 60-252. While it is true that appellate challenges to the "form and specificity of the oral or written findings" are not preserved when the appealing party fails to make a post judgment objection, Mason's arguments regarding the court's legal analysis and sufficiency of the evidence are not related to the form or sufficiency of the district court's findings. *Matter of Marriage of Bradley*, 258 Kan. 39, 48, 899 P.2d 471 (1995) (In all actions under K.S.A. 60-252 and Rule 165, when the trial court has made findings, it is not necessary to object to such findings to question the sufficiency of the evidence on appeal.). Mason's failure to object to the factual findings does not preclude this court's review of his claims challenging the district court's legal analysis or the sufficiency of the evidence supporting the conclusions.

II. THE DISTRICT COURT DID NOT ERR BY FINDING MASON'S CONDUCT WAS THE LEGAL CAUSE OF UNDERSHERIFF MCCANN'S CRASH

Mason claims the district court wrongly "focused on legally irrelevant considerations such as accountability, responsibility, and fairness," and that his conduct was not the legal cause of Undersheriff McCann's crash and he was therefore not responsible for the resulting damages. "[T]he Legislature has incorporated restitution as a component of criminal sentencing in K.S.A. 2022 Supp. 21-6604." *State v. Taylor*, 317 Kan. 364, 367, 530 P.3d 431 (2023). The Kansas criminal restitution statute provides, in relevant part:

> "In addition to any other conditions of probation, suspension of sentence or assignment to a community correctional services program, the court shall order the defendant to comply with each of the following conditions:. . .make reparation or restitution to the aggrieved party for the damage or loss caused by the defendant's crime, in an amount and manner determined by the court and to the person specified by the court, unless the court finds compelling circumstances which would render a plan of restitution unworkable." K.S.A. 2019 Supp. 21-6607(c)(2).

The Kansas Supreme Court has held "that the causal link between a defendant's crime and the restitution damages for which the defendant is held liable must satisfy the traditional elements of proximate cause: cause-in-fact and legal causation." *State v. Arnett*, 307 Kan. 648, 655, 413 P.3d 787 (2018). This limits the defendant's restitution to the "'consequences that are probable according to ordinary and usual experience.'" *Arnett*, 307 Kan. at 654 (quoting *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 420, 228 P.3d 1048 [2010]). A defendant is not liable in restitution for every possible damage; instead, liability is limited to "circumstances when the risk of harm from the defendant's conduct and the ensuing results were foreseeable." *State v. Martin*, 308 Kan. 1343, 1352, 429 P.3d 896 (2018).

Causation in fact typically requires the State to prove "that it is more likely than not that, but for the defendant's conduct, the result would not have occurred." *Arnett*, 307 Kan. 648, Syl. ¶ 5. However, when the damage is caused from a chain of events rather than a single act, an intervening cause of the damage may reduce or eliminate the defendant's liability. But, if "the intervening cause is foreseen or might reasonably have been foreseen by the defendant," the defendant's conduct may still be the proximate cause of the damage. *Arnett*, 307 Kan. 648, Syl. ¶ 6.

This court reviews a challenged restitution order by determining whether substantial competent evidence supports the district court's factual finding of "the causal link between the crime committed and the victim's loss." *Arnett*, 307 Kan. 648, Syl. ¶ 3. Substantial competent evidence is legal and relevant evidence that a reasonable person could accept as sufficient to support a conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021). Therefore, this court must determine whether the record contains legal and relevant evidence that a reasonable person could find shows that it was foreseeable that Mason's criminal conduct created a risk of Undersheriff McCann crashing.

Mason argues that it was not foreseeable that Undersheriff McCann would continue driving in town at high speeds and drive "so closely that when Mr. Mason slowed down, Undersheriff McCann would not be able to do so as well." Mason also claims there was no evidence that he knew law enforcement was following him because Undersheriff McCann did not use his patrol lights or sirens during the pursuit and that McCann's conduct was "especially unforeseeable" because McCann "was not following law enforcement training and policies." Mason claims:

> "That Undersheriff McCann's actions functioned as an intervening cause that breaks the chain of causation is underscored by the testimony that had he been going slower, he likely would not have crashed. Deputy Finch also testified that it was possible Undersheriff McCann lost control of his vehicle because he was driving too fast.

12

Undersheriff McCann himself testified that it might have been possible for him to regain control of his vehicle if he had been driving more slowly."

Contrary to Mason's arguments, the record contains sufficient—in fact, abundant—evidence that it was foreseeable his conduct might create a risk of Undersheriff McCann crashing. The record contains substantial competent evidence that Mason fled from law enforcement driving at speeds more than twice the legal limit through several counties and, while eluding the police at such extraordinary speeds, was also reckless in weaving around other vehicles and crossing into oncoming lanes. Any reasonable person driving at such high speeds in the way Mason was driving, and in areas not intended for such speeds, would foresee the risk of causing a crash—even if not being pursued by law enforcement.

Additionally, the record contains substantial competent evidence to support a finding that Mason was aware—or that it would have been reasonably foreseeable to a person in Mason's position—that he was being pursued by the police. First, not long before the crash, Mason passed the roadblock created by Undersheriff McCann and Deputy Finch's marked patrol cars. A reasonable person in Mason's position would foresee that law enforcement would pursue him after he failed to stop at the roadblock. Second, Deputy Finch—who also pursued Mason—kept his patrol car's lights and siren on for the entire pursuit, which would alert a reasonable person that they were being pursued by law enforcement. Third, Undersheriff McCann was in a marked patrol car pursuing Mason at high rates of speed; even without lights and sirens, a reasonable person under those circumstances would recognize they are being pursued by law enforcement. Undersheriff McCann also testified that Mason looked back while being pursued. As demonstrated in the preliminary hearing testimony, law enforcement had been pursuing Mason for a significant distance before Mason passed the roadblock and Undersheriff McCann ultimately crashed, and a reasonable person would have recognized the risk of law enforcement continuing to pursue them. There is substantial

13

competent evidence in the record on which a reasonable fact-finder could rely to find that Mason's conduct was the legal cause of Undersheriff McCann's crash.

Undersheriff McCann's failures to use his patrol car's siren and emergency lights or wear a seatbelt were not sufficient intervening causes to break the causal connection between Mason's conduct and the resulting car crash. An intervening cause that breaks the causal link is "'one which actively operates in producing harm to another after the actor's negligent act or omission has been committed'" and not simply an action that may have increased the likelihood of risk or damage. *Puckett*, 290 Kan. at 421 (quoting Restatement (Second) of Torts 441 [1965]). Regardless of whether Undersheriff McCann activated his lights and siren, it is still reasonably foreseeable that Mason driving at speeds far in excess of the speed limit and in a reckless manner could cause a catastrophic crash to himself or someone else. Similarly, the evidence that Undersheriff McCann might have been able to avoid the crash had he slowed down is not an intervening cause because a reasonable person in Mason's position would foresee that eluding the police at extreme speeds might elicit a pursuit at equally fast speeds. When eluding the police at high speed, any abrupt deceleration—let alone a "hard, hard brake" or many other circumstances for that matter—could foreseeably cause a catastrophic crash. When engaging in such reckless conduct, a crash like the one that happened here is not only reasonably foreseeable, it is almost expected.

The record contains abundant legal and relevant evidence that a reasonable person could accept as sufficient to support the conclusion that it was foreseeable that Mason's conduct might have created a risk of Undersheriff McCann crashing, resulting in the damage for which Mason owes restitution. The district court's presumed finding that Mason's conduct was the legal cause of the crash is therefore affirmed.

III.    THE DISTRICT COURT DID NOT ERR IN AWARDING RESTITUTION TO AN INSURANCE COMPANY

Mason argues the district court erred in awarding any restitution to EMC because (1) insurance companies do not experience an actual loss by paying valid insurance claims; and (2) the State failed to prove that EMC suffered a loss because it did not present evidence that the claims exceeded the insured's premium payments.

Mason asserts these challenges against the district court's restitution order for the first time on appeal. Generally, issues not raised before the district court cannot be raised on appeal. See *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). However, the Kansas Supreme Court has recognized three exceptions to this general rule:

> "'(1) [T]he newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) the claim's consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court's judgment may be upheld on appeal despite its reliance on the wrong ground or reason for its decision.'" *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021) (quoting *State v. Harris*, 311 Kan. 371, 375, 461 P.3d 48 [2020]).

When an appellant desires to raise an issue on appeal that was not raised below, they must include "an explanation why the issue is properly before the court." Kansas Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36). This rule is strictly enforced. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

Mason asserts that his first claim involves only a question of law arising on proven or admitted facts and is determinative of the case. Mason further argues that consideration of both claims is necessary to serve the ends of justice and prevent the denial of Mason's fundamental right to be sentenced in accordance with the law and to "ensure that Mr. Mason is not paying restitution to a party that did not suffer any loss."

15

The State asks this court to decline to reach Mason's unpreserved claims as it would require further factual development. Mason has satisfied Rule 6.02(a)(5) by explaining why he believes his unpreserved claims are properly before this court, and this court has discretion to hear these claims, which it exercises in the interest of completeness. See *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021).

As to Mason's first claim that insurance companies do not suffer an actual loss from paying valid claims, this court exercises unlimited review over questions involving the interpretation of the underlying restitution statutes. *Martin*, 308 Kan. at 1350. Mason acknowledges that, under governing Kansas authority, restitution can be awarded to an insurance company. See *State v. Beechum*, 251 Kan. 194, Syl. ¶ 3, 833 P.2d 988 (1992) (finding that a district court may award restitution to a secondarily aggrieved party such as an insurance company that compensated the originally aggrieved party for the harm). This court is bound to follow controlling Kansas Supreme Court precedent unless there is some indication that the court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). No such indication exists here.

Moreover, panels of this court have routinely rejected this claim and held that restitution may be awarded to insurance companies. See, e.g., *State v. Robison*, 58 Kan. App. 2d 380, Syl. ¶ 8, 469 P.3d 83 (2020) ("Neither K.S.A. 2017 Supp. 21-6604(b)(1) nor K.S.A. 2017 Supp. 21-6607(c)(2) prohibit a district court from awarding restitution to an insurance carrier that has suffered damage or injury as a result of the defendant's crime."); *State v. Hand*, 45 Kan. App. 2d 898, Syl. ¶ 3, 257 P.3d 780 (2011), *rev'd on other grounds* 297 Kan. 734, 304 P.3d 1234 (2013) ("A third party, including an insurance company, paying a crime victim's financial loss typically becomes an aggrieved party entitled to restitution payments from a convicted criminal."). Nothing in the applicable statutes or other Kansas law prevents an insurance company from receiving restitution payments for claims paid as a result of a defendant's criminal acts.

Consistent with governing Kansas Supreme Court precedent, this court finds the district court did not err in ordering Mason to pay restitution to an insurance company.

In addressing Mason's second claim that the State failed to prove the insurer suffered a loss because it did not present evidence of loss above the insured's premium payments, this court reviews the "'amount of restitution and the manner in which it is made to the aggrieved party'" for an abuse of discretion. *Martin*, 308 Kan. at 1349. A district court abuses its discretion when its decision is based on an error of fact or law or is so arbitrary or fanciful that no reasonable person would agree with the decision. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023).

The purpose of restitution is to "to restore the victims of crime to the position they found themselves in prior to a defendant's commission of the offense that caused the injury or damage." *Robison*, 58 Kan. App. 2d 380, Syl. ¶ 4. Here, as the State argues, the district court's restitution order restores EMC to the position it would have been in had Mason's criminal conduct not caused Undersheriff McCann to crash. Had Undersheriff McCann not crashed trying to catch Mason, EMC would not have had to pay the resulting insurance claims. Kiowa County's premium payments to maintain the insurance policy under which the claims were submitted does not change the fact that EMC would not have needed to pay those claims absent Mason's criminal conduct. Mason identifies no error of law or fact and has not shown the district court's restitution award was unreasonable. In fact, the district court carefully considered the amount of restitution and did not order Mason to pay for any of Undersheriff McCann's medical bills. The district court did not abuse its discretion in awarding restitution to EMC without accounting for the premium payments received for the coverage.

17

IV.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY ORDERING AN
       UNWORKABLE RESTITUTION PLAN

Finally, Mason claims the district court's restitution order is unworkable. "An appellate court reviews a district court's decision on the workability of a restitution plan for an abuse of discretion. The party asserting error has the burden of showing an abuse of discretion." *Taylor*, 317 Kan. 364, Syl. ¶ 4. Again, a district court abuses its discretion when its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *Bilbrey*, 317 Kan. at 63. Finding a restitution order unworkable is an exception to the generally accepted rule that district courts should impose restitution orders. *Taylor*, 317 Kan. 364, Syl. ¶ 2 (". . .an order imposing restitution is the rule and a finding that restitution is unworkable is the exception."). "Thus, the burden is on the defendant to show compelling circumstances that would render restitution unworkable, in whole or part." 317 Kan. at 368. This requires defendants to demonstrate their inability to pay at the time the financial obligation is due. 317 Kan. 364, Syl. ¶ 3. In determining whether a plan is workable, this court will consider "the defendant's income, present and future earning capacity, living expenses, debts and financial obligations, and dependents." *State v. Meeks*, 307 Kan. 813, 820, 415 P.3d 400 (2018). When the defendant is subject to probation until the restitution is paid, "the amount of time it will take a defendant to pay off a restitution order will also be relevant." 307 Kan. at 820.

Mason argues that no reasonable person would agree that the restitution plan is workable because in order to pay it off within the 12-month probation term, "he would have to pay over $3,000 a month." According to Mason, "[i]f he paid at the rate the district court ordered, $100 a month, his probation could be extended for 33 years before the whole amount would be paid. No reasonable person would agree that either of those options is workable." Mason's argument is unavailing. First, Mason disregards the reasonable probability that his financial situation will change and that he will be able to

increase the amount he pays each month. Mason testified that he believed he could obtain employment during his probation term and that he had made progress in his job search. Second, Mason failed to present any other relevant evidence such as debts, financial obligations, healthcare expenses, high living expenses, or dependent care that might make the plan unworkable.

Given the evidence available to the district court, this court simply cannot say that no reasonable person would find the restitution plan unworkable. "In all circumstances, the district court should keep in mind the ultimate goals of restitution: compensation to the victim and deterrence and rehabilitation of the guilty." *Meeks,* 307 Kan. at 820. Mason failed to carry his burden of showing that his case is an exception in which compelling circumstances render the restitution plan unworkable. *Taylor*, 317 Kan. at 368. The district court therefore did not abuse its discretion in ordering the restitution plan, and its judgment is affirmed.

CONCLUSION

The district court did not err in finding Mason's conduct caused Undersheriff McCann's crash and that Mason was responsible for the amount of restitution ordered. Nothing in Kansas law prevents an insurance company from recovering restitution for claims paid—regardless of the premium payments received for the coverage. Finally, while the restitution payment is significant, it is related to and caused by Mason's conduct. This court cannot say the restitution order is arbitrary, fanciful, or so unreasonable that no one would agree it is a workable plan. Therefore, the district court's restitution order is affirmed.

19